**STATE of Missouri, Respondent,**

v.

**Nathan TAYLOR, Jr., Appellant.**

No. 49910.

Supreme Court of Missouri,

Division No. 1.

Feb. 10, 1964.

Hugh J. White, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, James S. Corcoran, Sp. Asst. Atty. Gen., St. Louis, for respondent.

HOUSER, Commissioner.

Nathan Taylor, Jr., was convicted by a jury of unlawfully selling a narcotic drug, in violation of § 195.020, V.A.M.S. The jury assessed a penalty of eight years' imprisonment in the penitentiary. On this appeal defendant relies upon four points, one of which is that the court erred in refusing to give an instruction offered by defendant, submitting the defense of entrapment.

The refused instruction directed a verdict for defendant upon a finding that the federal agent to whom the sale is alleged to have been made lured, urged or encouraged defendant to commit the offense charged in order to prosecute him for it when defendant would not have committed an offense of that general character except for the urging of the agent; that the criminal intent or willing disposition to commit the crime did not originate in the mind of the defendant, but in the mind of the federal agent.

The state conceded in argument that the offered instruction was correct in form and substance as a statement of the law of entrapment, so we do not pass upon that question. The state sought to uphold its refusal on the ground that there was not a sufficient evidentiary basis therefor; that there was no evidence that the agent implanted a criminal intent in the mind of defendant or induced or lured him to commit the offense.

In reviewing the evidence on this issue we confine ourselves to the testimony favorable to defendant. In important particulars his testimony was contradicted by that of the narcotics agent, but it was the exclusive function of the jury to pass upon the credibility of the witnesses and determine which spoke the truth. "Ordinarily the defense of entrapment raises a question which should be submitted to the jury under proper instructions, this being particularly true where the testimony of accused, at face value, supports the defense." Anno: Entrapment—Narcotics Offense, 33 A.L.R. 2d 883, loc. cit. 902. The refusal to instruct on the subject was the equivalent of a finding that as a matter of law there was no entrapment. If the evidence favorable to defendant supported the instruction offered it was a question for the jury and not for the court alone, "regardless of what either the lower court or this court may think about appellant's guilt." Hamilton v. United States, 5 Cir., 221 F.2d 611, 613.

The state's principal witness, James Snokhaus, a federal narcotics agent, worked in an undercover capacity among narcotic violators and suspects in St. Louis and vicinity for several months, trying to make purchases of narcotics. He assumed identity with narcotic traffickers, and associated freely with them, with the object of arresting violators. Eventually he "rounded up" and caused the arrest of thirty suspects, including this defendant. Snokhaus worked with an informer named Jimmy Lewis, an associate of people engaged in this illicit traffic. Lewis was employed at a drug store. At the time he was employed to work with Snokhaus, Lewis had been arrested by the city police department and was under investigation in connection with a theft of narcotics. Snokhaus posed as a close friend of Lewis, and held himself out to be a pharmacist, so as to make his association with Lewis appear natural and account for his desire to purchase narcotics in considerable quantities. Snokhaus first met defendant on March 24, 1962. The sale which is the subject of this prosecution is alleged to have occurred on July 7, 1962. The foregoing facts were testified to by Snokhaus. The following facts could have been found, partly from the testimony of Snokhaus and partly from that of defendant. Prior to July 7, 1962 defendant had never handled, sold, used or trafficked in narcotics. Although defendant had been convicted of forgery of government checks in 1955 there is no evidence that he had been in any trouble thereafter, or that he had ever been convicted of any violation of the narcotics laws, or that he was reputed to be a trafficker in narcotics, or an addict. Snokhaus conceded that neither Lewis nor any other person had told him of ever having purchased narcotics from defendant. Snokhaus did not know of anybody (other than himself) who had bought narcotics from defendant. Between March 24 and July 7 Snokhaus, pretending to be in the market for marijuana, initiated conversations with and visited defendant on five different occasions. Defendant did not know that

Snokhaus was a federal narcotics agent. On each of these occasions Snokhaus would tell defendant that he would like to purchase, or "make a buy," of marijauna, and ask defendant if he could "get him some" or suggest some contact from whom Snokhaus could get it. This suggestion was always accompanied by an offer by Snokhaus to pay defendant $5 for each can of marijuana bought through defendant. On one of these visits to defendant's home Snokhaus, in an effort to fraternize with defendant and secure his confidence, provided beer and drank beer with him. On each of these contacts defendant denied that he had any narcotics and denied that he knew anyone who could supply Snokhaus with narcotics. Defendant did not at any time tell Snokhaus that he handled narcotics. At no time prior to July 7 did he recommend anyone who might supply them or make any effort to go out and find a supplier. None of these meetings with Snokhaus was initiated by defendant. Nor did defendant make any effort to get in touch with Snokhaus' confederate, Jimmy Lewis. It was always Snokhaus who sought out, found and contacted defendant. On July 7 Snokhaus made another trip to defendant's house, accompanied by Lewis. On this occasion he fabricated the claim that he wanted to buy marijuana for a party he was giving for some people; said he was "supposed to get it for them," and asked defendant if he could "get it for him, or get somebody to sell it to him." Snokhaus said he wanted a couple of cans and repeated his persistent offer that for each can defendant would sell him he would give defendant $5. Defendant was not working, and the plain inference from his testimony is that the prospect of making $10 finally caused him to go out that night with Snokhaus and Lewis, in the agent's private automobile, in search of a source of narcotics. Defendant "figured" he might be able to ask someone who would know about it; hoped he could find somebody who could lead him to a supplier. He inquired at a hotel and at the "Music Box." He learned that marijuana was available in Kinloch, so Snokhaus, Lewis and de-

fendant proceeded to Kinloch, in the agent's automobile. There defendant encountered one Burl, the only person in Kinloch defendant knew. He did not know that Burl had access to marijuana, but he asked Burl where he could get some. Burl, not having any, after making a phone call, told defendant to go to a certain street intersection in St. Louis where he would meet a woman named Darlene, who would supply the narcotic. At the appointed time and place Darlene appeared, and eventually she produced two cans of marijuana, which she transferred to Snokhaus at a tavern, for $40. Snokhaus then paid defendant $10. After July 7, 1962 Snokhaus tried to purchase more marijuana from or through defendant, but defendant told Snokhaus he did not know "where any was." Defendant specifically denied that he had ever worked with Burl or shared the purchase price of narcotics with Burl or anyone else, prior to July 7, 1962.

From the evidence of entrapment favorable to defendant the jury could have found that the narcotics agent did not have reasonable cause to suspect that defendant was an actual or potential violator of the narcotics laws; that defendant did not have a predisposition or criminal intent to violate these laws; that Snokhaus' actions were not those of an enforcement officer merely offering to one who was willing and waiting and already engaged in the illicit traffic, an opportunity to commit an offense. The jury had a right to find that the government agent initiated the idea of purchasing the narcotics; that the crime was the "product of the creative activity" of Snokhaus, that the intention to commit this crime did not originate in the mind of defendant but was planted there by the agent, who, through misrepresentation and deceit, imposition, persistent and repeated solicitation, inducement and promises of money consideration to one in reduced financial circumstances, finally engineered defendant's participation in criminal activity which but for the pressures applied would never have been undertaken by him.

Lutfy v. United States, 9 Cir., 198 F.2d 760, 33 A.L.R.2d 879, is a case directly in point. There defendant testified that he had never engaged in the narcotic traffic; never had narcotics in his possession or under his control and had no knowledge of others having narcotics until a narcotics bureau employee whose connection with the government was unknown to defendant suggested that he call a certain person, through whom a sale was effected. The government employee visited in the home of the accused, drank with him, posed as a friend, and over a long period of time importuned him to procure narcotics for a fictitious person; introduced accused to other persons who, unknown to accused, were narcotic agents, who also pleaded with him to procure the narcotics for the fictitious person, representing that she badly needed them. Finally, after several beers, defendant succumbed to their entreaties, and armed with money they supplied, bought and transferred narcotics to them. The 9th Circuit Court of Appeals held that on such a showing the defendant was entitled to have the jury properly instructed on the law covering his defense of entrapment, citing Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Woo Wai v. United States, 9 Cir., 223 F. 412; Driskill v. United States, 9 Cir., 24 F.2d 525; Ryles v. United States, 10 Cir., 183 F.2d 944; and cf. United States v. Markham, 7 Cir., 191 F.2d 936. See also Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Morales v. United States, 6 Cir., 260 F.2d 939; United States v. Romano, 2 Cir., 278 F.2d 202; Hamilton v. United States, 5 Cir., 221 F.2d 611, and numerous other federal and state cases collected at 33 A.L.R.2d, l. c. 902. And see 22 C.J.S. Criminal Law § 45(4), p. 151.

The defense of entrapment was available to defendant, was invoked by him, and the jury should have been instructed on the subject. The court erred in deciding the issue against defendant as a matter of law. The state contends that there was no error in refusing to give the instruction on

entrapment because that defense is inconsistent with the defendant's denial of the charge. The general rule is that the defense of entrapment is not available to a defendant who denies that he committed the offense charged. State v. Varnon, Mo.Sup., 174 S.W.2d 146; State v. Egan, Mo.App., 272 S.W.2d 719; Anno.—Availability of defense of entrapment where accused denies participating at all in offense, 61 A.L.R.2d 677. This rule is based upon the assumption that the act charged was committed. It is said that where defendant insists that he did not commit the act charged "one of the bases of the defense is absent." Rodriguez v. United States, 5 Cir., 227 F.2d 912. However, there are circumstances, of which this case is an example, where the two defenses are not so repugnant that the proof of one necessarily disproves the other. In Henderson v. United States, 5 Cir., 237 F.2d 169, 61 A.L.R.2d 666, a deputy sheriff engaged in detection of liquor law violations persuaded defendant to go into the business of operating an illicit still. The deputy testified that he and defendant arranged with a third party to use the latter's still and that several runs of liquor were produced. Another government witness positively connected defendant with the operation of the still, the third party with the financing, and the sheriff providing "protection." Henderson admitted his participation in the operation of the illicit distillery, but denied the connection with the third party or that he was in any way a party to the conspiracy. The trial judge's refusal to instruct on entrapment was reversed by the court of appeals, which held that defendant could admit operating the still, deny his complicity in the conspiracy and still defend on the ground that the overt acts he committed were done as a result of entrapment; that "he could say, 'I did not go so far as to become a party to the conspiracy, but to the extent that I did travel down the road to crime, I was entrapped.' " 237 F.2d, l. c. 173; that the two defenses were not so repugnant that the proof of the one necessarily disproves the other. And see People v. West, 139 Cal.

App.2d Supp. 923, 293 P.2d 166. In the instant case Taylor, admitting his participation in the acts leading up to the transfer of the narcotics, sought exoneration on two theories; first, that the facts admitted did not constitute a "sale" as between defendant and the government agent and that defendant's connection with Darlene Moore did not make him jointly guilty with her; second, that he was entrapped. In other words, admitting that he was there; that he searched for and found a source of marijuana and a willing seller, arranged for a sale and was present when the narcotics were transferred, defendant argues that in legal contemplation his acts did not, technically, constitute a "sale" or joint action with the seller, but that if he is wrong as to the legal effect of what he did, he nevertheless should be exonerated on the ground of entrapment. Under these circumstances both defenses are available.

A decision on the other three points relied upon by defendant is not necessary to a disposition of this appeal. In view of the necessity of remand, however, and of the likelihood that one and perhaps all three of these points will be raised again, we will determine them now.

First is the point that the court erred in overruling defendant's motion to dismiss the information. The information challenged named James A. Snokhaus as the purchaser of the narcotics. The information was filed as a substitute for the original indictment, which named James Larson as the purchaser. Appellant claims that by reason of this difference in names the substitute information charged a different *offense* from that charged in the indictment, to defendant's prejudice because he could not adequately defend against this charge of a new set of materially different facts. The following considerations establish that this point is without merit. Supreme Court Rule 24.02, V.A.M.R. authorizes the court to permit an information to be substituted for an indictment at any time before verdict (this substitution occurred

the day before trial) "if no * * * different offense is charged and if substantial rights of the defendant are not prejudiced." Section 195.020, V.A.M.S. makes it unlawful for any person to sell any narcotic drug except as authorized by law. The gist of the offense is the sale of narcotics by an unauthorized person. It is an offense under § 195.020, V.A.M.S., to sell narcotics to *any* person. For a somewhat analogous situation see State v. Lundry, 361 Mo. 156, 233 S.W.2d 734, 735. While desirable it is not necessary to allege the name of the purchaser in a narcotics case brought under § 195.020, V.A.M.S. because the identity of the person to whom the sale is made does not constitute an essential element of the offense condemned by the statute. The liquor cases held the same way. State v. Brooks, Mo.Sup., 18 S.W.2d 16; State v. Ridge, Mo.App., 274 S.W. 496.[1] The offense charged in the substitute information (a person not an apothecary or pharmacist unlawfully and feloniously selling 69.790 grams of marijuana for fifty dollars) was no different from that charged in the indictment, except as to the name of the person to whom the drug was allegedly sold. The difference in the stated names of the purchaser did not make it a different offense. This substitution effected no change either in the nature of the offense charged or in the punishment to be inflicted, upon conviction. The identity of the purchaser was not in dispute. Appellant made no claim that James Larson is a different person from James Snokhaus.[2] There is nothing in this record to indicate that the intent in the original indictment was to refer to an entirely different person from him named in the substitute information, or that defendant was misled by the misnomer, or prejudiced by the change in the name. The mistake in the surname was cured by the statute of jeofails, § 545.290, V.A.M.S. Except for the name of the purchaser the

proof would have been exactly the same under the indictment and under the substitute information. There is no question that the identity of the purchaser of the drug was known to defendant. Defendant testified that in his presence the prospective purchaser was referred to as "Jim"; that he introduced himself as "Jim," and that defendant was never given Jim's last name. Defendant, while a witness on the stand, referred to him as "Jim." Defendant was not prejudiced by the misnomer in making his defense—it was not necessary for him to know the last name of the purchaser in order to identify *this sale* from other sales, for if he was telling the truth this was the only sale in which he ever participated. The defense was not rendered more difficult to sustain as a result of the substitution. Defendant was not thereby obliged to call other and different witnesses. See State v. Sturrs, Mo.Sup., 51 S.W.2d 45, upholding the amendment of an information charging first degree robbery of Lum Bong to charge that the victim was Sit Yen. The test of prejudice is whether a defense under the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after as well as before the amendment. This case meets all the tests.

■ The second and third points are that the court erred in overruling defendant's motion for acquittal and in giving the state's main verdict-directing Instruction No. 2, for lack of substantial proof that defendant either acting individually or jointly with another consummated a sale of narcotics. Defendant contends that the state's evidence showed that the federal agent arranged with *Darlene Moore* for the sale; that she alone procured the narcotics; that the federal agent handed the agreed sum of $40 directly to Darlene Moore; that the agent gave defendant $10 "for his

1. The rule is otherwise in cases where it is necessary to the validity of the indictment to allege the owner of property, as in cases of burglary. State v. Wright, 339 Mo. 41, 95 S.W.2d 1159 [4, 5].

2. Where an amendment effects a change of identity by specifying an entirely different person it is a material change and a fatal variance. State v. Fennewald, Mo.Sup., 339 S.W.2d 769, 774 [5].

trouble" but did not say the $10 was a part of the purchase price; that the exchange between buyer and seller was complete without any action on defendant's part; that there was an absence of necessary proof of some exchange between the defendant and the buyer; that there was no evidence that defendant acted jointly with Darlene Moore in obtaining the narcotics, or that he shared the proceeds of the sale with her, or even that he knew her.

The state's evidence, supplemented in some respects and corroborated in some of its essential details by the testimony of defendant himself, showed that when the federal agent approached defendant on the night of July 7 defendant told the agent that he was "temporarily out of marijuana" at the time, but could arrange for the agent to receive some; that he would contact "his man" Burl to obtain marijuana; that defendant and the agent drove to the community where defendant's "man" lived; that in making this trip defendant "hoped" to find someone who could lead him to a supply of this narcotic; that defendant's motive was to bring the agent into contact with a source of narcotics; that defendant talked to Burl and that Burl stated he could provide two cans of marijuana for $40; that after a further talk with Burl, following the making of a telephone call by Burl, defendant reported to the agent that he, the defendant, had "finally got the thing set up" for a transfer at a certain street corner in St. Louis; that a woman named Darlene would be there and provide the narcotic; that defendant and the agent went to the appointed place, met Darlene, who went with them to a tavern; that in return for the $40 he handed two cans of marijuana to defendant, who in turn handed the narcotics to the agent, who paid Darlene the $40 purchase price and paid defendant "the $10 [Snokhaus] offered [defendant] to find somebody that would sell it * * * to him." This is ample evidence to sustain the submission of this case by Instruction No. 2, the form of which has not been challenged, on the theory that defendant aided, abetted, assisted and encouraged Darlene Moore, an unauthorized person, in the joint commission of the crime of unlawfully and feloniously selling narcotics. Defendant was clearly implicated as a principal on the theory of his joint action with Darlene Moore, both of them acting with a common intent in the commission of the crime. State v. Siekermann, Mo.Sup., 367 S.W.2d 643. It was not necessary to show that defendant performed each and every act connected with the sale. As the prime mover in the finding of the narcotics and the consummation of the sale defendant in law is as much a seller as the seller herself.

For error in the refusal to give the instruction on entrapment the judgment is reversed and the cause is remanded for a new trial.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.