STATE of Missouri, Plaintiff-Respondent,

v.

Joseph TAYLOR, Defendant-Appellant.

No. 35291.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 9, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Jr., Asst. Circuit Atty., St. Louis, Mo., William F. Arnet, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles D. Kitchen, Public Defender, John D. Bauer, Kent Fanning, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

SIMEONE, Judge.

Defendant-appellant, Joseph Taylor was charged, tried, found guilty by a jury and sentenced by the court to ten years in the department of corrections for selling a Schedule I controlled substance, heroin, in violation of Chapter 195, RSMo, V.A.M.S. He appeals. We affirm.

The state's case was based chiefly on the testimony of Officer William Robinson of the Narcotics Division. Trial was held February 14 and 15, 1973.

On the morning of June 15, 1972, Sergeant Robert Boaz of the Metropolitan St. Louis Police Department, assigned to the Narcotics Division, together with Officer William Robinson and an unidentified woman informant drove to Boyle and Lindell Boulevards in the City of St. Louis. Sergeant Boaz who was Robinson's supervisor met Robinson and a woman informant who was known to Boaz. Sergeant Boaz gave Officer Robinson a ten dollar bill and told him to go along with the informant to 4135 Westminster Avenue. The informant asserted that she knew the people at that address. While Sergeant Boaz waited in a vehicle, Officer Robinson and the informant proceeded to that address.

When Officer Robinson and the informant arrived at the house, a four family flat, there were several persons in front of the house, including the defendant, Taylor, and one Willie Hamilton, known sometimes as Charlie or Billy.

Officer Robinson was allowed to testify over objection to the following. When Robinson and the informant arrived at the house, the informant greeted the persons and especially Taylor and said, "Hey, baby, what's up? How's it going?" She said, "I came back like I said." "I came to get my stuff." Officer Robinson, Taylor, Hamilton and the informant were invited into the house, went in and proceeded back to the kitchen. Back in the kitchen, the informant said, "I came to get my stuff, man. I want to get my thing now." Taylor asked, "How much do you want?" And the woman replied, "I want two things." Some conversation occurred between Robinson and Hamilton. Officer Robinson testified that "Mr. Hamilton was high and he was carrying on he was talking to me at which time he was telling me about this bad trip he was on." Then Taylor said to Hamilton, "Man, go and get the stuff," or "Will you go and get the stuff." Hamilton left the kitchen and went down the hall. Taylor in turn left and went out the back door and out of sight. While Robinson and the woman informant were in the kitchen, one of the women who had been on the front proch as the two entered came into the kitchen, but did not say anything.

Hamilton returned in a short time with two red capsules. The woman informant told him to give "it to him [Robinson] because he has the money." Hamilton gave Robinson the capsules and Robinson in turn gave Hamilton the money. Taylor was "returning to the room" at that time.

When Taylor returned to the room, he had a rolled up cloth which contained a spoon and an eyedropper with a needle. A capsule was given to the informant; it was put in a spoon and lit and cooked, and the informant "stuck the needle into her skin and put the solution into her body." "In other words she shot up?" "Yes." Then Officer Robinson testified, "Mr. Taylor shot up. He . . . used a slot as a tourniquet and shot in his arm."

Officer Robinson gave Hamilton the ten dollar bill, and Hamilton gave him the "stuff."

On cross-examination Officer Robinson admitted that the informant made the offer to buy something, but that Officer Robinson received the capsules and handed the ten dollar bill to Hamilton.

Officer Robinson was, at the time, a detective with the Narcotics Division and had been assigned to that division for ap-

proximately four or five months, but had spent a total of about seven to eight months in that Division. His specific duties were to work as a "narcotics undercover man." His job was to purchase narcotics if he could. He had seen the informer only once before.

Robinson had gone through a training period of some six weeks to identify narcotics and narcotic paraphernalia. He attended classes and had field training. As part of the training he would be taken to various locations where narcotics are known to be sold, was introduced to various persons and places and became acquainted with the terminology. He was introduced to various narcotic users and was familiar with symptoms of users, and during the course of training was shown various capsules.

On July 13, 1972 a suppressed indictment was filed charging the defendant with the sale of heroin to William Robinson. On that same day Taylor walked into police headquarters and said that he heard the police were looking for him. It was at that time the defendant was arrested for the alleged incident on June 15.

On redirect examination Sergeant Boaz was asked whether he specifically put out that defendant was wanted. His response was, "Well, we had a suppressed indictment for his arrest." An objection was made to this as not responsive, and it was moved that the answer be stricken. The court overruled the objection and motion.

Following the indictment, several motions were filed by counsel for defendant. One of the motions filed on August 18, 1972 was a motion for a bill of particulars.

The motion moved the court for an order directing the State to give the names and addresses of the "persons to whom defendant is alleged to have sold the heroin. . . . " and the "names and addresses of the persons who allegedly requested the defendant to sell the heroin." The court overruled the motion.

Subsequently on October 25, 1972, a substitute information in lieu of indictment was filed alleging a prior conviction and charging that Taylor unlawfully sold heroin to Robinson.

During the trial a chemist testified that the substance in the capsules contained heroin.

During the closing argument of the state, the assistant circuit attorney commented, "Some of this activity may make you sick. The problem is, it's necessary. You just do not get the pusher off the street and if you would say, 'Well, I'd like to see a kilo of heroin . . .'" This argument was objected to because of the reference to a "pusher." "There's no crime alleged as being a pusher and there's no evidence of a pusher . . . It is improper closing argument and also no evidence in this trial as to what the Circuit Attorney's arguing." The court overruled the objection.

At 11:57 a. m. the jury retired to deliberate. At 12:30 p. m. the jury went to lunch, and at 2:00 p. m., the jury was asked by the court how they stood numerically. The foreman replied, "A three-way split." The court after stating that "as I understand it at this time you're not numerically close to a verdict," gave instruction No. 8—a "hammer" instruction.[1]

---

1. "Instruction No. 8. At this time, after you have been deliberating, I give you this additional instruction. It is desirable that there be a verdict in every case. It costs considerable money and time and effort to try any lawsuit and the parties are entitled to have their rights determined once and for all in every case, and the 12 jurors chosen to try this case should be as well qualified to do so as any other 12 that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue, yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict."

From the very beginning, before and throughout the trial, defendant contended that he was entitled to be informed of the name and address of the woman informant because "this informant is the only witness in a position to amplify—cannot conject [sic] testimony as a governing witness and also that this informant was in fact the main and sole negotiator of the alleged sale of heroin involved . . . and the fact that unless the informant's name and address is produced, it will deny me the possibility to prove up the defense of entrapment and also deny me by [my?] right under the Sixth Amendment to cross-examination."

On appeal, defendant makes several contentions: (1) The court erred in overruling the objection to (a) Sergeant Boaz's reference to a suppressed indictment, (b) Officer Robinson's testimony "in regards [sic] to the defendant carrying certain narcotics apparatus," and (c) the reference to defendant "shooting up." He contends these matters are irrelevant, immaterial and prejudicial because they evidence "other crimes;" (2) The court erred in overruling his request for the name and address of the woman informant because her information was relevant and helpful to the defense and was essential to a fair trial; (3) The court erred in allowing Officer Robinson to testify as to what the informant and Willie Hamilton said because the statements made by Robinson were hearsay and denied defendant the right of confrontation guaranteed by the Constitution; (4) The court erred in permitting Officer Robinson to testify regarding the meaning and interpretation of "drug terminology" because no proper foundation had been laid; (5) The court erred in overruling his objection in the state's closing argument when the assistant circuit attorney made reference to "pusher" because there was no evidence in the case to warrant such a reference and it was highly prejudicial as inflaming the emotions of the jury; and (6) The court erred in giving Instruction No. 8—the "hammer instruction."

As to the first point, defendant contends that the references by Officer Robinson to the fact that the defendant "shot up"— "used a slot as a tourniquet and shot in his arm" and carried certain "narcotic apparatus" does not tend to prove or disprove the crime charged (of "sale") or any material fact pertaining to the issue of whether the defendant sold "narcotics." He contends that this evidence was emotionally inflammatory which "could tip the scales of justice." He contends that if the defendant had been charged with possession, the evidence of the possession of the apparatus would have been permissible, but when the charge is for "sale", such evidence is irrelevant and prejudicial, because such testimony is not relevant to prove the commission of a sale. In effect he contends that evidence of the use of heroin and possession of "narcotic" apparatus is irrelevant and injects collateral issues in the case.

The issue to be determined is whether the court erred in permitting testimony over objection that the defendant "possessed" certain "narcotic" paraphernalia and injected himself with a "narcotic" substance at the time of the sale for which the defendant was on trial. Or in other words —is the possession and use of drugs during or near the time a sale is made admissible when defendant is on trial for the sale of drugs.

▇▇▇ The well established general principle is that proof of the commission of separate offenses is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. Evidence of other crimes when not related to the cause on trial violates the defendant's right to be tried for the offense for which he is charged. State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). There are numerous exceptions, however. Evidence of other crimes is competent to prove the specific crime charged (sale) when it tends to establish a common plan embracing the commission of two or more crimes so related to each other that proof

of one tends to establish the proof of the other. The testimony of Officer Robinson that the defendant and the informant injected themselves with "narcotics" and that the defendant possessed "narcotic" paraphernalia tended to prove that the defendant had heroin in his possession, available for sale [See State v. Gortarez, 96 Ariz. 206, 393 P.2d 670, 672 (1964)] and that the substance sold was of a narcotic character. See also Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962) where evidence of prior sales of heroin was probative to establish offense of possession.

■ Furthermore, if the fact of other crimes may be regarded as part of the res gestae, then such evidence is admissible. The entire relevant facts may be regarded as part of the res gestae. State v. Shumate, 478 S.W.2d 328, 330–331 (Mo.1972); State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877 (1931); State v. Robb, 439 S.W.2d 510, 514 (Mo.1969); State v. Walker, 490 S.W.2d 332, 333 (Mo.App.1973)—evidence of gun, stolen license plates and syringe admissible in possession case.

■ Under the peculiar facts of this case we believe that the evidence relating to the possession of drug paraphernalia by the defendant and the fact of use of narcotics by the defendant are so related to the transaction for which he is charged that the evidence was admissible to tend to prove that a sale was made.

Second, the principal contention of appellant is that the court erred in overruling his request for the name and address of the informant because her information was relevant and helpful to the defense and was essential to a fair trial.

He argues that the circumstances in this case warrant disclosure.

Whether the identity of an informer must be disclosed at trial has posed a great dilemma for the courts. What is referred to as the informer's privilege is in reality the privilege of the State to withhold the identity of persons who furnish information to officers charged with enforcement of the law. At one time in Missouri there was an unqualified right to withhold the identity of an informant. State v. Bailey, 320 Mo. 271, 8 S.W.2d 57 (1928). "It would be against public policy to compel a sheriff or other officer to disclose the identity of the person or persons who inform him of facts tending to show that a given person is guilty of felony. If information of this character cannot be given to an officer freely and without fear on the part of the informant that his part in the arrest and prosecution of one suspected of felony will be made public, the detection and prosecution of crime will be intolerably hampered and be defeated altogether in many instances." Bailey, supra, 8 S.W.2d at 59.

But the modern doctrine is expressed in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) and McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The general principle is that there is a privilege to withhold the identity. The purpose of the privilege is the "furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro, supra, 353 U.S. at 59, 77 S.Ct. at 627. The purpose is not to protect the informer but to protect the public interest. Once the policy is made of full disclosure, especially in cases involving controlled substances or narcotics, the effectiveness of the informer is destroyed, or worse still—a dead man can tell no tale.

But the privilege has its limitations. They arise from the fundamental requirements of fairness. "Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determina-

tion of a cause, the privilege must give way." Roviaro, supra, 353 U.S. at 60–61, 77 S.Ct. at 628.[2]

■ Hence, "[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, supra, 353 U.S. at 62, 77 S.Ct. at 628. Our Supreme Court has followed this policy. State v. Edwards, 317 S.W.2d 441 (Mo. banc 1958); State v. Yates, 442 S.W.2d 21 (Mo.1969). See also Annot., 76 A.L.R.2d 275 (1961) and 1 L.Ed.2d 1999 (1957).[3]

■ The decision whether the informant is essential to a fair determination of the issue in any given case is for the trial court in the first instance, and whether the defendant can have a fair trial without requiring disclosure is a matter resting in the discretion of the trial court. State v. Yates, supra, 442 S.W.2d at 25.

■ Taking into consideration the circumstances of this case and the "flexible" standards as set forth in Roviaro, we believe that the trial court did not err in denying the request for disclosure. The "informer" who was present at the transaction was not the sole witness or partici-

pant, as in Roviaro, supra. As pointed out by Judge Sirica in City of Burlington, Vermont v. Westinghouse Electric Corp., 246 F.Supp. 839, 844 (D.C.1965), "The informer [in Roviaro] was the sole participant, other than the accused, in the transaction alleged. He was the only witness in a position to amplify or contradict the testimony of Government witnesses. Obviously, in order to prepare his defense it was necessary . . . to obtain the identity of the informer. . . ."

■ Some decisions have held that where the informant "participates" in the transaction the identity should be disclosed. See cases collected in Annot., 76 A.L.R.2d 262, 287 (1961); 8 Wigmore, Evidence (McNaughton rev. 1961), § 2374. But participation alone is not sufficient to require disclosure. Analysis of these decisions indicates that where there is participation plus other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or where the informant is the sole witness, then for purposes of fairness the identity may be required to be disclosed. But such is not the situation here. The informant was not the sole participant.[4] There was no question about the identity of the defendant or the contents of the capsules or the defendant's lack of knowledge of the contents of the capsules. Officer Robinson testified. He was under oath. He was subject to cross-examination. The trial judge was obviously satisfied and he exercised his discretion to respect the informer's privilege.[5] McCray v. Illinois, supra, 386 U.S. at 303, 87 S.Ct. 1056.

2. It has been held that where the defense was that of mistaken identity, the identity of the informer must be disclosed. People v. Durazo, 52 Cal.2d 354, 340 P.2d 594 (1959), 76 A.L.R.2d 257 (1961).

3. Appellant contends that the right to confrontation was violated by not disclosing the informant. This point can be disposed by Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) and McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). "Petitioner also presents the contention here that he was unconstitutionally de-

prived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit." Cooper v. California, 386 U.S. at 62, Note 2, 87 S.Ct. at 791.

4. See State v. Davis, 450 S.W.2d 168 (Mo. 1970).

5. See State v. Hubble, 494 S.W.2d 358 (Mo. App.1973). In that case analogous to the situation here, the informer was present during a sale of stimulant drugs. The informer intro-

Furthermore, reliance on the identity of the informer was not essential to establish guilt, Officer Robinson was present and testified as to the facts of transferring the money and accepting the capsules. He was an eye witness to the transaction.

Under all the circumstances we cannot say that the identity of the informant was "essential to a fair determination" of the cause and that the trial court erred in denying disclosure.

Next, defendant contends that the court erred in permitting Officer Robinson to testify as to what the informant and Willie Hamilton said because the statements made by Robinson were hearsay and denied defendant the right of confrontation.

Officer Robinson testified that the informant stated, "I came to get my stuff . . . I want to get my thing now." The defendant said, "How much do you want," and the informant replied, "I want my two things." When Hamilton returned, the informant told the defendant to give "it to him [Robinson] because he has the money." Hamilton gave Robinson the capsules and Robinson gave Hamilton the money. Taylor was present. Defendant contends these statements were inadmissible; the State is content to respond that "these statements occurred over the negotiations over the sale . . . and were therefore part of the res gestae," relying on State v. Talbert, 454 S.W.2d 1 (Mo. 1970).

The general rule is that statements or acts and conduct of third persons are admissible in evidence when they are so closely connected with the crime so that they constitute a part of the res gestae.[6] While often referred to as the exception relating to excited utterances, the phrase is, in addition, employed to explain declarations giving meaning to an operative transaction such as a sale. McCormick, Evidence 586 (1954).

The statements and conduct here preceding and at the time of the sale can be said to be so closely connected with the crime as to give meaning to the sale, and so as to constitute a part of the res gestae —that elucidates the main fact in issue— whether the sale of heroin actually took place. The rule is applicable to acts and conduct of third persons " 'which precede the offense immediately or by a short interval of time and which tend to elucidate a main fact in issue. . . .' " State v. Talbert, supra at 3; Cf. State v. Wright, 319 Mo. 46, 4 S.W.2d 456, 458 (1928).

Appellant next contends that the court erred in permitting Officer Robinson to testify regarding the meaning and interpretation of certain drug terminology because no proper foundation had been laid. We do not agree. The evidence shows that Robinson had gone through a training period, he attended classes, he did field work, he was familiar with symptoms of users and the trial court at one point indicated that it believed he was qualified. He

---

duced two officers to the defendant. The informant did not testify. The officers identified the defendant in court. The officers gave defendant money for tablets. The Kansas City District held that the trial court "exercised proper discretion in not compelling disclosure of the informant's identity." 494 S.W.2d at 362.

"The true issue is whether public policy requires preservation of the anonymity of the informer, or, whether 'fundamental requirements of fairness' compel disclosure as measured by the specific circumstances of this particular case. . . . All the circumstances in a particular case must be weighed and eval-

uated. . . . As a practical matter, and rightfully so, determination thereof rests within the sound discretion of the trial court. . . ." 494 S.W.2d at 361.

6. "The marvelous capacity of a Latin phrase to serve as a substitute for reasoning, and the confusion of thought inevitably accompanying the use of inaccurate terminology, are nowhere better illustrated than in the decisions dealing with the admissibility of evidence as 'res gestae.' " Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale L.J. 229 (1922).

had been assigned to the narcotics division for some months, and worked as an undercover agent.

" . . . [T]he determination of whether a witness is qualified to give particular testimony rests largely within the discretion of the trial court, although such determination is reviewable for abuse." Davis v. Gatewood, 299 S.W.2d 504, 511 (Mo.1957); State v. Terry, 325 S.W.2d 1 (Mo.1959); State v. Menard, 331 S.W.2d 521 (Mo.1960); State v. Brown, 291 S.W. 2d 615 (Mo.1956); State v. Sims, 395 S. W.2d 445, 450 (Mo.1965); State v. Stevens, 467 S.W.2d 10, 23 (Mo.1971).

We find no abuse of discretion. The training and experience of Officer Robinson were sufficient for the court to determine in the first instance his qualifications. The weight was for the jury.

Appellant complains that the court erred in denying objections to a reference to a "pusher" in the state's closing argument because there was no evidence thereof to warrant such inference and was prejudicial and inflamed the emotions of the jury. Appellant candidly states that he "does not argue with accepted principles that such a determination is for the trial court's *sound* excuse [exercise?] of discretion," and "that our review is limited to determination of whether or not there has been an abuse of discretion."

Appellant further says that the court did not exclude the remark or tell the jury to disregard it. But no request was made to do so.

■ It is true that it is a fundamental concept that an accused is entitled to a fair trial, and the duty of the prosecutor to see that he gets one. And when argument goes beyond the bounds so that it excites, inflames or appeals to prejudices, a new trial will be declared. State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, 526 (banc 1947).

■ But the trial court has wide discretion in determining the latitude in permitting argument of counsel. State v. Hill, 328 S.W.2d 656 (Mo.1959), and the appellate court will not reverse unless there has been an abuse of such discretion.

■ As long as the prosecutor stays within the record and its reasonable inferences his argument is legitimate. State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 306 (banc 1956).

■ We do not believe the court abused its discretion. There was evidence to establish that the defendant had participated in the offense of selling a controlled substance and no further reference to "pusher" as far as the record shows was made.

The principal case relied on by appellant, State v. Tiedt, supra, is clearly distinguishable.

■ Appellant lastly complains that it was error to give Instruction Number 8, the hammer instruction. Defendant contends that this instruction was coercive and invaded the province of the jury. Instructions identical to Instruction No. 8 have been approved by the Supreme Court, State v. Jackson, 446 S.W.2d 627, 630 (Mo. 1969); State v. Morris, 484 S.W.2d 288, 290 (Mo.1972); State v. Corlew, 463 S.W. 2d 836, 840 (Mo.1971), and by this court, State v. Cochrell, 492 S.W.2d 22, 27 (Mo. App.1973), McMillian, J. dissenting. We do not believe that the giving of this instruction under the circumstances was coercive or invaded the province of the jury. See MAI–CR 1.10, effective January 1, 1974. Cf. ABA Minimum Standards Relating to Trial by Jury, § J.4, pp. 146– 147 (approved draft, 1968).

We have reviewed the decisions cited by appellant and find them to be inapplicable, distinguishable or not dispositive of the issues raised in this proceeding.

Therefore, finding no prejudicial error, the judgment is affirmed.

DOWD, C. J., and WEIER, J., concur.