STATE of Missouri, Respondent,

v.

Michael DOOLEY, Appellant.

No. KCD 28790.

Missiouri Court of Appeals, Kansas City District.

April 4, 1977.

Joseph Hamilton Scott, Public Defender, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

The jury found defendant guilty of the sale of controlled substance in violation of Chapter 195 RSMo 1969. Sentencing having been left to the trial judge by the jury, the judge fixed sentence at one year in the county jail and a fine of $1,000. On this appeal, defendant assigns four points of error. None of these warrants reversal.

The evidence, taken most favorably to the State, shows the following facts. In early 1974, Drug Enforcement Administration agents Cecil O'Rear and Larry Sprouse were working undercover in Buchanan County, Missouri, and were utilizing the services of an informer, Bob Smith. Smith introduced the agents to defendant. Those four individuals met together on the afternoon of March 12, 1974, and talked about obtaining some MDA (methylenedioxyamphetamine). The defendant told the agents that he could obtain some "later on that day." The group then proceeded to a pizza restaurant where defendant made a phone call and said it would be a while before they could get the MDA. Then the group went to several taverns in the St. Joseph area, following which they went to a residence where defendant went in and came back out with Patty Hendrix and Nancy Eberting.

This enlarged group then went to another restaurant where defendant and the two women made several telephone calls. Hendrix reported as a result of her calling that they would have to go to Atchison, Kansas, to get the MDA.

Thereupon these parties drove to a trailer park where Hendrix, Eberting, Sprouse and the defendant went into a trailer occupied by Jack Thompson. After a while O'Rear and Smith tired of waiting outside in the car, and they went to the door of the trailer to enter and join those inside. Defendant immediately accosted them and warned them not to come in because Thompson was "paranoid" about meeting more than one stranger at a time.

Thompson and defendant went into a bedroom in the trailer and after a few minutes called Sprouse to join them. Thompson and the defendant were sitting on the bed. Thompson told Sprouse that he had the MDA which was laced with LSD and that he would have to have $55 in payment. Sprouse gave Thompson the money and obtained a packet of purported MDA. He went to the bathroom and performed a chemical field test, the result of which was positive for MDA.

Sprouse, defendant, Hendrix and Eberting then left the trailer and, together with O'Rear and Smith, drove back to the residence of the young women. At that point, defendant told Sprouse he would like to see the MDA to make sure that they had received a good deal. When Sprouse let defendant see the packet, defendant scooped out a portion and stated that was his "copping fee."

I.

Defendant states as his first Point Relied On that the trial court erred by admitting evidence: (a) to the effect that the role of the informant Smith was to introduce the DEA agents to narcotics dealers and that without him they would sometimes be unable to penetrate "the organization;" and (b) as to how agent O'Rear dressed and

acted while on assignment in Buchanan County. Defendant argues that the evidence mentioned was irrelevant and prejudicial in that it implied defendant was a member of the drug culture or a drug seller and attempted to prove "guilt by association."

■ A certain amount of background information, even though not direct evidence, is admissible as part of the res gestae. This principle applies where the acts in question "preceded the offense immediately or by a short interval of time and tends to elucidate a main fact in issue." *State v. Taylor,* 508 S.W.2d 506 (Mo.App. 1974). Under this principle, background evidence of the general character now challenged by defendant has been permitted in order to help the jury to understand the testimony. *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (1972). The evidence here in question constitutes the type of preliminary matter which may be gone into as part of "the history of the case." *State v. Warters,* 457 S.W.2d 808, 814 (Mo.1970).

■ So far as the objection concerns the testimony of agent O'Rear that "sometimes without an informant we wouldn't be able to penetrate into the organization itself," it must be observed that this portion of O'Rear's testimony was volunteered in an answer which went beyond the question asked of him. An objection to pursuing the line of inquiry was sustained by the trial court. No further relief was requested with respect to this matter by the defense, and no complaint in this regard can legitimately be made now.

## II.

■ Defendant next contends that the trial court erred by failing to grant defendant's motions for acquittal, because of insufficiency of the evidence. He argues that the evidence shows only that he was present at the scene of the crime but fails to show that he did anything to aid or encourage the sale of MDA by Thompson to Sprouse.

This argument ignores the facts. Defendant was the one who initiated the day-long hunt for MDA when he first told the agents that he thought he would be able to obtain some. He was the one who located Eberting and Hendrix and brought them into the picture. He actively participated in the activities inside Thompson's trailer and was the one who sat alongside Thompson inside the bedroom when the sale was consummated. Most tellingly of all, he claimed credit for procuring the sale and insisted upon taking a "copping fee" for having accomplished it. Under these facts, defendant was even more the "prime mover" than was the defendant convicted under quite similar facts in *State v. Taylor,* 375 S.W.2d 58, 63 (Mo.1964).

## III.

Defendant next contends that the trial court erred by allowing the prosecutor to inquire of Thompson whether he had been convicted of the sale of MDA, for the reason that Thompson had not yet been sentenced for that sale. He relies upon *State v. Frey,* 459 S.W.2d 359 (Mo.1970) which holds that sentence must have been imposed before there can be a final judgment and a "conviction" for the purpose of impeaching credibility. In this connection, defendant points out that although Thompson had pleaded guilty to the offense of selling MDA, he had not as yet been sentenced at the time of the instant trial.

■ Defendant's contention misstates the record. The prosecutor did initially undertake to impeach Thompson on the basis of his having been "convicted" of the MDA sale. However, the trial court sustained objection to that inquiry. What the prosecutor was finally permitted to do was to inquire of Thompson whether he had pleaded guilty to the sale of MDA. That inquiry related to the admission of a crime, and the answer was admissible independent of the conviction. *State v. Foster,* 349 S.W.2d 922 (Mo.1961); *State v. Summers,* 506 S.W.2d 67 (Mo.App.1974); *State v. Lynch,* 528 S.W.2d 454 (Mo.App.1975).

## IV.

For his final point defendant contends that the trial court erred by failing to grant a new trial because of improper conduct by the prosecutor. The conduct complained of refers to the opening statement in which the prosecutor referred to the general operation of the DEA and the drug problem in Buchanan County; the attempt by the prosecutor to introduce evidence concerning how the DEA operated and the drug problem in Buchanan County; the introduction of evidence that the agents let the defendant think whatever he wanted as to their identity including thinking that they were involved in organized crime; the attempt to introduce evidence as to defendant's appearance and manner of dress when he first met the agents; the reference in closing argument to Smith as one who would make contact for the agents with sellers of drugs; and the prosecutor's reference in closing argument to defendant as a drug dealer and the desirability of giving a warning to drug sellers that citizens of the community would not put up with the selling of drugs "to our children."

So far as evidence about general operation of the DEA and the general drug problem is concerned, some preliminary background information was properly admissible as already discussed under point I of this opinion. Actually the amount of evidence along this line was very limited and was cut short at an early point by the trial court. The general subject was appropriate, at least to a limited extent, and the prosecutor cannot be charged with any grossly improper conduct by simply attempting (unsuccessfully) to pursue the subject a bit too far.

Respecting the testimony by agent O'Rear that he let defendant think whatever he wanted, even to the extent of believing that he and his partner might be "organized crime people," defendant made no objection to that statement and asked no relief with respect to it at the time. This objection, to whatever extent it might otherwise be valid, now comes too late.

Respecting the effort to introduce evidence concerning defendant's personal appearance, the trial court sustained objection to the evidence and the subject was not pursued. The asking of this question was not the type of deliberate, repeated, aggravated conduct by a prosecuting attorney which calls for supervising discipline from an appellate court and which is the subject of cases such as *State v. Burns,* 286 Mo. 665, 228 S.W. 766 (1921) and *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524 (1947), relied upon by defendant.

As for defendant's objection to the references in closing argument to sellers of drugs and the prosecutor's inclusion of defendant within that class, that argument was within the evidence which had been offered to the jury, and the argument was therefore permissible. *State v. Taylor,* 508 S.W.2d 506 (Mo.App.1974).

Nor is the fleeting reference to "our children" in the prosecutor's closing argument, in the context of a plea for the importance of law enforcement, such an objectionable personalization that a new trial should be granted. *State v. Charlton,* 465 S.W.2d 502, 504–505 (Mo.1971). Moreover, no objection was made to this portion of the argument at the time, and the point therefore has not been preserved for appellate review; and the point does not constitute "plain error" under Rule 27.20(c). *State v. Hill,* 539 S.W.2d 521, 530 (Mo.App. 1976).

Affirmed.

All concur.