**STATE of Missouri, Respondent,**

v.

**James A. MILES, Appellant.**

**No. 30601.**

Missouri Court of Appeals,
Western District.

March 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 7, 1980.

Application to Transfer Denied
May 13, 1980.

Clifford A. Cohen, Public Defender, Kevin Locke, Gary L. Gardner, Asst. Public Defenders, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

James Miles was convicted by the court sitting without a jury of two counts of sale of a controlled substance. Section 195.020, RSMo 1975 Supp. Punishment was assessed at imprisonment for five years on each count with the sentences to run concurrently.

On this appeal Miles contends the evidence was insufficient to support a finding of guilt because he was acting as an agent of the purchaser, an undercover officer. Affirmed.

There is no dispute as to the facts. Rebecca Richel, an undercover police officer, became acquainted with Miles through an informant. In October 1977, while on duty, Officer Richel asked Miles to obtain some Dilaudids for her. Miles stated he did not have this drug but he knew where he would get some. He and the officer went in her car to a residence and Miles informed her that the cost would be $17.50 for each pill. The officer gave him two twenty-dollar bills and Miles entered the residence. About fifteen minutes later he returned and gave her two pills which were stipulated to be Dilaudids, a drug containing hydromorphone. Miles kept the $5.00 in change which he said was his "copping" fee. (Copping is a term used for buying.)

About three days later, Officer Richel again met Miles with the informer and Miles asked her what she wanted at that time. Miles accompanied the officer to another residence and the officer again gave him $40.00. He entered the house and returned about ten minutes later and gave her two small pills. This time the officer gave Miles $5.00 voluntarily in addition to the purchase price. It was stipulated the pills in the second transaction also contained hydromorphone.

The sole point raised by Miles is that his motion of acquittal should have been granted because the evidence was insufficient to support a conviction against him for making a sale of a controlled substance because it was shown without dispute he only acted as the agent of the officer.

Section 195.020 declares it to be unlawful for any person to . . . sell . . . any controlled . . . substance . . . Section 195.010(30), RSMo 1975 Supp., defines "sale" to include "barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee;".

In *State v. Dooley,* 549 S.W.2d 677 (Mo. App.1977) this court upheld the conviction of Dooley for selling a controlled substance when Dooley was the person who led the undercover officers to the man who had the drugs, and sat on the bed next to the person making the sale to the officer. Dooley left with the officers after the seller completed the sale and later took a portion of the drugs as his "copping" fee. This court held the evidence was sufficient to sustain Dooley's conviction of selling a controlled substance. This court relied on *State v. Taylor,* 375 S.W.2d 58 (Mo.1964) which held the evidence was sufficient to show Taylor guilty of selling a controlled substance. There, the undercover officer approached Taylor and inquired about purchasing some narcotics. Taylor said he was temporarily out but he could arrange for the officer to receive some. Taylor contacted another man and through arrangements made by Taylor he and the officer met a woman on a street corner. The officer, Taylor and the woman went to a nearby tavern where the woman sold the officer two cans of marijuana. The officer directly paid the woman and also gave Taylor a $10.00 fee for finding the dope. The court held Taylor was the prime mover in the finding of the narcotics and in the consummation of the sale. The court also held Taylor was implicated as a principal on the theory of his joint action with the woman who made the sale because both of them acted with a common intent in the commission of the crime. The court held in the circumstances Taylor was as much a seller as the woman who made the sale.

In *Taylor II, State v. Taylor,* 391 S.W.2d 835, 838 (Mo.1965) Taylor's second conviction was appealed and the court noted he again asserted that he was entitled to be discharged because the evidence showed he was only an agent for the purchaser and not an agent for the supplier. The court stated Taylor was not charged as an agent, either of the buyer or the seller, but was charged as a principal and the evidence was sufficient to support his conviction as a principal.

In *State v. Schlagel,* 490 S.W.2d 81 (Mo. 1973) an undercover officer met a man from whom he was supposed to buy drugs. The man was accompanied by Schlagel. They entered a car driven by Schlagel and Schlagel took the drugs from behind the sun visor and handed them to the officer. The officer paid the man accompanying Schlagel, but since the man did not have change, Schlagel gave the officer the change. The court held this evidence was sufficient to sustain the conviction of Schlagel for selling a controlled substance because the facts constituted substantial evidence of a participation in the sale by Schlagel.

Under the holding in the above cases it is apparent the evidence in this case is sufficient to support the conviction. Certainly Miles participated in the sale when he took the officer's money, entered the house on each occasion, and returned with the drugs. The fact that he accepted a fee on both occasions for procuring the drugs is

important to show his participation. While the agent of the purchaser defense was raised in *Taylor II* the court did not directly answer that contention. However, the Supreme Court of Alaska has considered that argument in *McKay v. State,* 489 P.2d 145 (Alaska 1971). Under a statute defining sale in identical terms to the statute in this state, the court held the definition of sale expressly includes agents. The court noted in n. 12, p. 152 that some states have held that an agent of the purchaser cannot be convicted of a sale of a prohibited drug. However, the court stated:

> We believe the courts that have rejected this "purchasing agent" doctrine have more accurately reflected the probable legislative intent underlying the rather expansive definition of "sale" contained in the Uniform Narcotic Drug Act. As the Illinois Supreme Court stated in *People v. Shannon,* 15 Ill.2d 494, 155 N.E.2d 578, 580 (1959):
>
>> "We interpret the meaning of the word 'sale', as defined by the act, to be much broader in scope than that usually given to it in other branches of the law. Admittedly, the defendant took the role of at least an agent, and the act specifically declares an agent in a narcotics transaction to be a seller. We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between in such a transaction constitutes a sale."

This court agrees with the rationale of *McKay* and *Shannon* and rejects the purchaser-agent defense raised by Miles. The definition of the term "sale" includes agents without distinction of whether a person is acting as agent for the seller or buyer.

The judgment is affirmed.

All concur.