**108**

STATE of Missouri,
Plaintiff-Respondent,

v.

Scott Randall CHANCE,
Defendant-Appellant.

No. 14235.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 8, 1986.

Motion for Rehearing or to Transfer
to Supreme Court Denied
Oct. 28, 1986.

Application to Transfer Denied
Nov. 18, 1986.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

M. Elise Branyan, Asst. Public Defender, Springfield, for defendant-appellant.

TITUS, Judge.

Defendant was indicted, jury-tried and convicted of selling marijuana/marihuana (also called "pot") in violation of § 195.-020.[1] In accordance with the verdict, defendant was sentenced to a 5–year term of imprisonment. He appealed.

Seven to ten days ere July 24, 1984, undercover Springfield Police Officer Adams met one Dougherty to buy pot. Defendant accompanied Dougherty which was Adams' first encounter with defendant. Dougherty, defendant, Adams and another undercover officer (Wells) went to a market where Adams gave Dougherty $60 to buy half an ounce of pot. Dougherty did not return with either the money or the pot. On July 24, 1984, defendant took Adams and Wells to another market vowing he could get them marijuana for $60. Ad-

ams gave defendant the sum but defendant returned the money shortly thereafter saying he could not get any then but "might later." The two undercover officers on July 27, 1984, took defendant to a Springfield residence occupied by one Suriette. After defendant's initial meeting alone with Suriette and upon motioning to Adams, the latter entered the premises to find Suriette holding a tray containing loose and bagged marijuana. Adams and defendant seated themselves on separate chairs while Suriette sat on a couch. Samples of marijuana and a lighted "joint" were passed among the trio and Adams simulated taking a drag on the cigarette. Ultimately Adams indicated which bag he wanted and handed it, together with $30 to defendant who, in turn, passed the bag and money to Suriette. The bag of marijuana was then returned to Adams by Suriette via defendant. Before departing, Adams undertook to arrange a bigger deal with Suriette who told him to make such arrangements through defendant. Upon returning defendant to his home, Adams declined defendant's request for a "joint" out of the purchase which Adams described as a common practice of "pinching the bag" for setting up the deal. In exchange therefor, defendant accepted Adams' offer of $5.00.

█ Defendant's first claim is that the trial court erred in failing to direct a verdict of acquittal because the evidence was insufficient to support a finding that he sold marijuana.

Section 195.010(32): " 'Sale' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee." Under this statutory definition of "Sale" it has been held that "proof that defendant acted either as the principal in the sale or as an agent for either the buyer or seller was sufficient to sustain his conviction for selling marijuana." *State v. Perkins*, 650 S.W.2d 339, 341[3] (Mo.App.1983); *State v. Miles*, 599 S.W.2d 948, 950 (Mo.App.1980).

1. Statutory and rule references are to V.A.M.S. and V.A.M.R.

The court in *Miles,* 599 S.W.2d at 949, summarized *State v. Schlagel,* 490 S.W.2d 81 (Mo.1973), Taylor II, *State v. Taylor,* 391 S.W.2d 835 (Mo.1965), *State v. Taylor,* 375 S.W.2d 58 (Mo.1964) and *State v. Dooley,* 549 S.W.2d 677 (Mo.App.1977) all of which presented facts strikingly similar to those in the instant matter and which were held sufficient to support the convictions. In *McKay v. State,* 489 P.2d 145 (Alaska 1971), the Supreme Court, under a statute defining "sale" in identical terms to the law of this state, held the definition of "sale" expressly included agent. The Alaska court quoted with approval what was said in *People v. Shannon,* 15 Ill.2d 494, 155 N.E.2d 578, 580 (1959), to wit: "We interpret the meaning of the word 'sale,' as defined by the act, to be much broader in scope than that usually given to it in other branches of the law.... We are of the opinion that the definition shows a legislative intent that the act of a person whether as agent, either for the seller or the purchaser, or as a go-between, in such a transaction constitutes a sale." 489 P.2d at 153. Defendant's first point relied on is denied.

■ Defendant's second point relied on is that the trial court erred in permitting the state, over defendant's objections, to introduce evidence of defendant's involvement in attempted drug transactions which transpired prior to the happenings of July 27, 1984, for which he was convicted. There is no disputing that the state may not introduce evidence of other criminal acts of the defendant unless such evidence is relevant for some purpose other than to show a probability that he committed the crime on trial because he is a man of criminal character. *State v. Perkins,* 680 S.W.2d 331, 334[2] (Mo.App.1984). Nonetheless, "evidence of other crimes is admissible ... where it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial. *State v. Trimble,* 638 S.W.2d 726, 732[4] (Mo. banc 1982), *cert. denied,* 459 U.S.

1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). Evidence that defendant accompanied Dougherty when the latter met with the undercover agents for the express purpose of purchasing pot and Dougherty's double crossing of Adams, coupled with defendant's comment that Dougherty's betrayal "wasn't good business," went to show how defendant became acquainted with Adams et al. and his awareness of what the intended transaction entailed. Also, defendant's taking $60 from Adams only three days before the charged incident for the avowed purpose of buying marijuana and his subsequent revelation that he was unsuccessful then but could buy it "maybe later," constituted direct evidence of defendant's intent to undertake a "sale" of pot as that term is defined in § 195.010(32).

We need not decide whether the proof that defendant merely accompanied Dougherty on the first reported occasion or whether his later avowed unsuccessful and unwitnessed attempt to buy pot, presented evidence sufficient to convict him of any crime. But even so assuming, the history of his conduct ere July 27, 1984, was admissible under the so-called "complete story" exception. That is, use of other crimes evidence is permissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings." McCormick on Evidence § 190, at 558–59 (3d ed. 1984); *Perkins,* 680 S.W.2d at 334[5]. Clearly the evidence of defendant's previous activities aided the jury in putting his actions of July 27, 1984, in context. The point is denied.

In defendant's third and final point he claims the trial court erred when it overruled defense counsel's objection to a remark made by the prosecutor in closing argument. The point has this background. In closing argument the prosecution stated: "Ladies and gentlemen, it's clear. It's simple. There's nothing complicated about it. [The defendant] sold marijuana to Officer M.J. Adams on the 27th day of July, 1984, in Greene County. The State has proven its case beyond a reasonable doubt. Well, what was the defendant's case? Answer

that's a good question—[Defense Counsel]: I object to that, Your Honor. The Court: What's the basis of the objection? [Defense Counsel]: [Defendant] isn't required to put on any evidence in this case, and I think that's what [the prosecutor] is referring to. [The Prosecutor]: No, it isn't, Your Honor. The Court: I will overrule the objection until I hear some more. I can't tell at this point." Thereafter, the prosecutor proceeded to outline defendant's cross-examination of the state's witness and the weaknesses in defendant's arguments. Defendant voiced no further objections to this segment of the state's argument during trial. However, in his motion for a new trial defendant said: "That the trial court erred to the defendant's prejudice when it overruled defendant's objection to a remark made by the State's attorney during his closing argument when he indicated, 'We have heard nothing from the defendant', because such a remark improperly infringed upon the defendant's right not to testify and his lack of obligation to present any evidence or testimony on his own behalf."

No one disputes that no person shall be compelled to testify against himself in a criminal cause, Mo. Const. art. I, § 19, or that if a defendant shall not avail himself of his right to testify that fact shall not "be referred to by any attorney in the case...." § 546.270; Rule 27.05(a). Both direct and indirect references to defendant's failure to testify are forbidden. *State v. Chunn,* 657 S.W.2d 292, 294[2] (Mo.App.1983). Important to deciding whether a direct reference to the failure to testify has been made is whether the words "accused" or "defendant" and "testify" or their equivalents have been used. *State v. Hill,* 678 S.W.2d 848, 850[3] (Mo.App.1984). No such language was employed here and we find no direct reference. To be an indirect reference the remark, when viewed in context, must be the type that would cause the jury to infer the remark referred to defendant's failure to testify. *State v. Reed,* 583 S.W.2d 531, 534 (Mo.App.1979). The critical question is whether the remark drew the jury's attention to the lack of testimony by defendant himself; and in answering that question, we must examine the statement in the particular context in which it was made. *Hill,* 678 S.W.2d at 850[5–6].

Before we become mesmerized with generalities and legal expressions applicable to the bulk, specifics pertinent to the case at hand should be observed. At trial defendant objected to the prosecutor's argument because "I think" the state was referring to the fact defendant had not "put on any evidence in this case." After the prosecutor denied he intended such a reference, the court indicated he could not "tell at this point" and would overrule "the objection until I hear some more." No additional objection was made and in such circumstances the trial court could properly assume the remainder of the prosecutor's statement had clarified the argument so that defendant no longer found it objectionable. *State v. Zweifel,* 570 S.W.2d 792, 794[3] (Mo.App.1978), *rev'd on other grounds on reh'g,* 615 S.W.2d 470 (Mo. App.1981). Also, at most the prosecutor's comment related to defendant's failure to offer evidence, not to his failure to testify. *State v. Mason,* 588 S.W.2d 731, 737[9] (Mo.App.1979) and cases there cited. Of similar import is the fact that defendant's trial objection was that the state's argument implied defendant had not "put on any evidence" whereas in his motion for new trial defendant differently contends the argument indicated "We have heard nothing from the defendant." It is axiomatic a defendant on appeal or in a motion for a new trial may not enlarge an objection made at trial, which defendant has obviously undertaken to do here. *State v. Singleton,* 694 S.W.2d 828, 830[4] (Mo.App. 1985); *State v. Robinson,* 694 S.W.2d748, 750[5] (Mo.App.1985); *State v. Cannady,* 660 S.W.2d 33, 37[6] (Mo.App.1983); *State v. Comstock,* 647 S.W.2d 163, 165[2] (Mo. App.1983); *State v. Byrnes,* 619 S.W.2d 791, 793[5] (Mo.App.1981). The point is denied.

Affirmed.

GREENE, P.J., and FLANIGAN, J., concur.