THE STATE v. THOMAS E. BRESSE, Appellant.—33 S. W. (2d) 919.

Division Two, December 20, 1930.

886

*Louis J. Rasse* and *Lyons & Ristine* for appellant.

888

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondent.

DAVIS, C.—An information, filed in the Circuit Court of Saline County, after averring that defendant had been convicted of burglary and larceny in Marion County and duly sentenced, and, upon a compliance with said sentence, duly discharged from the State penitentiary, charged that defendant did steal a Ford automobile of the value of $500. He appealed from the judgment entered on the verdict finding him guilty and assessing his punishment at ten years' imprisonment in the penitentiary.

The evidence adduced on behalf of the State warrants the findin that, in 1913 in the Circuit Court of Marion County, defendant was found guilty of burglary and larceny, and that he was sentenced for two years in the penitentiary for each offense and later paroled. Subsequently, the court revoked his parole, and he served his sentence in the state penitentiary, and in due time was discharged.

The State's evidence further warrants the finding that Highway No. 65 runs from Marshall to Sedalia, and that, at the junction of United States highways No. 65 and No. 40, defendant operated a filling station and a garage. Marr lane, a dirt road commencing at a point about two miles east of defendant's garage, also ran from No. 40 to Sedalia. This seemed to be the main traveled road to Sedalia before No. 65 was paved. Four miles east of said garage, a road ran north from Highway No. 40 to the town of Nelson in Saline County.

On the afternoon of October 29, 1927, a celebration was in progress in the town of Nelson, known as "Nelson Day." About three o'clock in the afternoon of said day, Thomas Townsend arrived at Nelson in

his Ford car, painted green, purchased in May, and parked it on the north side of Second Street about thirty-five feet east of Main Street. The car was valued at $500. About four o'clock on the same day he returned and was unable to find his car. Townsend said that he did not know of anything peculiar about the car that distinguished it from any other Ford coupe with wire wheels, although he had never seen very many like it.

Around seven A. M. on October 29, 1927, one Roswell Ruff was seen at defendant's filling station on Highway No. 40. Around three-thirty P. M. on said day, defendant, accompanied by a stranger was seen in Nelson in his car. A second witness testified that at said hour he observed defendant, accompanied by a stranger, in a Ford coupe, which the stranger was driving. The coupe stopped ten or fifteen feet from another Ford coupe, whereupon the stranger alighted from defendant's car and entered a green Ford coupe belonging to Thomas Townsend, which was parked on the north side of Second Street in the town of Nelson, thirty or thirty-five feet east of Main Street. The stranger then backed the Ford coupe out and drove it south on Main Street. Defendant was observed driving his car in the same direction following the other car.

About two-thirty P. M. on said day, defendant and Roswell Ruff left defendant's filling station in a gray Ford coupe, traveling east, with Ruff driving. Nelson is northeast of the filling station. Another State's witness said no one was in the car with him when defendant left the filling station in his Ford coupe at two-thirty P. M. Another witness for the State said that he saw defendant in Nelson about four P. M. on said day, driving south on Main Street from Second Street, and that he did not see any car in front of him. Defendant was seen that afternoon turning his car into Marr lane from Highway 40, followed by another car not very far behind. A witness resided on Marr lane one mile south of Highway 40. About four hundred feet north of her home is located the Heath Creek Church. On the afternoon of said day, defendant stopped his Ford coupe at said Church. She saw another Ford coupe there. She saw two men in the front car, and observed one man get out of the front Ford and enter the back car, and the two cars came on down Marr lane. As they passed her house, she saw defendant driving the front car. Again on the afternoon of said day, defendant was seen about a mile south of Heath Creek Church driving his Ford, and in front of him was a stranger driving a Ford car. Witness said that this stranger was dark complexioned. and that he had dark hair and a dark beard, unshaven for several days.

Tobe Raines testified that he lived on Marr lane south of Highway 40. About four-thirty P. M. on said day, he observed defendant passing his home along Marr lane in a gray Ford coupe, traveling in a southerly direction, and to the rear, 100 to 115 feet, was a green

Ford coupe. O. D. Raines, son of Tobe Raines, testified that, on the same occasion, in the presence of his father, he saw defendant driving a green Ford coupe with wire wheels, and a stranger was driving a gray Ford coupe; he did not know which car was in front. About seven-thirty P. M. on that night, a witness saw defendant on Highway 65, about six miles south of No. 40; defendant was driving a gray Ford coupe, which was wrecked. In a conversation, defendant said he had been to Sedalia.

About five P. M. on said day, defendant was seen on Marr lane driving a gray Ford coupe, and thirty or forty feet to the rear was a green Ford coupe, driven by Roswell Ruff, witness thought. The sheriff told him that the man he saw was Roswell Ruff. He saw Roswell Ruff again at Marshall at the preliminary. The telephone operator at Nelson identified a ticket showing that at nine-thirty P. M. on October 29, 1927, defendant called the residence of Mrs. Yates at Sedalia, and that someone conversed. Defendant desired to talk to Ruff, but was unable to get in touch with him.

Defendant's evidence tends to show that October 29, 1927, was Ruff's birthday, and that Ruff was in a certain office in Sedalia practically all afternoon. Five witnesses so testified. One took a receipt from Ruff for an abstract dated that day. Others remembered the day, because they kidded him relative to his birthday. Another witness testified that about four-fifteen P. M. on that day he cashed a check for $50 for him. Another witness sold a meal ticket to him around four-thirty on said day. Around five P. M. on said day, a druggist said that Ruff came in and paid a bill.

Several witnesses testified that about three-fifteen P. M. on October 29, 1927, two men drove up to defendant's filling station and garage in a Ford coupe from the west, and one alighted, saying he wanted to hire a car to take him to Nelson. Defendant was called and he advised the man that he would take him to Nelson for $1.50. The men conversed, and then one of the men drove away in the Ford, leaving the other there. The man remaining said that he and the other man traveled the same territory, and so he decided to leave his car at Nelson and ride with his friend, and that his friend was in a hurry to get to Kansas City. Defendant and the man got in defendant's car and drove towards Nelson. The man intimated that he had never driven a Ford with a gear shift and asked defendant to permit him to drive it to see how it worked. When they left, this man was driving defendant's car.

State witnesses, in rebuttal, testified that in their opinion the date on the fifty-dollar check that Ruff cashed with the restaurateur was changed from "31" or some other number to "29."

I. The defendant asserts that the evidence submitted involved suspicions only, and, consequently, that its force was not sufficient to

sustain a conviction. In arguing the contention, defendant analyzes the evidence, and submits:

(a) That the evidence shows that the Townsend car was not taken by defendant or anyone accompanying him to Nelson. In this we think defendant is mistaken. At least one witness testified that the stranger, who alighted from defendant's car, boarded a green Ford coupe, which witness recognized as belonging to Townsend, and drove it away.

(b) That the record is wanting evidence of a conspiracy. A conspiracy, prima-facie, may be shown by circumstantial evidence, the verity of which is for the jury. We need not again recite the evidence, which may be read in our summary of the facts. Suffice it to say that it is sufficient to support the inference that the stranger and defendant conspired together to steal an automobile, that the stranger stole one, and that defendant was present as an accessory aiding and abetting him.

(c) That competent evidence as to the value of the Ford coupe taken was lacking. Townsend, a farmer and owner of said Ford, testified that its value was $500 to him. Of course, the value to Townsend was not pertinent. However, while defendant objected to a question relative to its market value, he did not ask to have the answer stricken out, thus rendering the statement some evidence of its value. The rule seems to be that, where the property is second-hand, as was this Ford, proof as to its cost and its length of use may be put before the jury, and that constitutes evidence of value sufficient to support a finding. [Strothers v. McFarland (Mo. App.), 194 S. W. 881, 1. c. 885; 22 C. J. 183.]

(d) That the evidence does not show that defendant received any division of the spoils. It is not essential to the conviction of an aider or abettor that he received a division or any part of the stolen property. [State v. Brown, 104 Mo. 365, 16 S. W. 406.]

The preceding evidence tends to show, we think, the felonious taking of Townsend's car by the stranger accompanying defendant, and the stranger's possession of it. It also tends to show the presence of defendant at the time of the larceny and threafter, aiding and abetting the thief.

II. Defendant complains of Instruction 2 given in behalf of the State. The instruction authorized the jury to find defendant guilty provided they found that Ruff, or a person of some other name, stole Townsend's car and that defendant aided, assisted, abetted or encouraged him. The portion criticised reads: ''The defendant was then and there present unlawfully and feloniously aiding, abetting, assisting or encouraging or

was then and there present for the unlawful and felonious purpose and with the felonious intent to aid, abet, assist or encourage in any way, or by any means, the said person by the name of Ruff or some other name," etc.

Instruction 2A given to the jury reads: "The court instructs the jury that every person who is present at the commission of a felony, aiding, abetting, assisting or encouraging the same by words or gestures, looks or signs is in law deemed an aider and abettor and is liable as a principal. But on the other hand, mere presence at the commission of a felony or other wrongful act does not of itself render a person liable as a participator therein; if he is only a spectator, innocent of any unlawful intent touching such felony, if any, and does not aid, abet, assist or encourage those who are actors therein, if any, he is not liable as a principal or otherwise."

Instruction 2 is denounced because it permits the conviction of defendant if he was present with the felonious purpose and intent to aid and abet; because it conflicts with Instruction 2A; and because there is no evidence that defendant aided and abetted any person in stealing the car. Our ruling on the demurrer to the evidence disposes of the complaint that the record is without evidence that defendant aided any person relative to the larceny of the car. The first and second postulates may be considered together.

Instruction 2A correctly states the applicable rule of law for the guidance of the jury, and thus fully protects the defendant. Instruction 2, in so far as it authorizes the jury to find defendant guilty, if he was present aiding, abetting, assisting or encouraging the stealing of the car, also is in accord with the precedents. But the presence of a person for a felonious purpose and with a felonious intent of aiding and abetting may not be the equivalent of aiding and abetting. Neither the purpose to commit a crime, nor the intent to commit a crime, without an act in furtherance of the purpose or intent, is a legal offense. One may not be held criminally responsible for a state of mind unaccompanied by an act. So, unless defendant was present actually aiding, abetting, assisting or encouraging the person who took Townsend's car, he was not guilty, even though he purposed and intended to aid him. Of course, if he was there as a lookout for said person, he was aiding him. One may be present, even for the purpose and with the intent of aiding, but if he is not actually aiding, or had not encouraged the principal, he is not a participant in the offense. [State v. Odbur, 317 Mo. 372, 295 S. W. 734.] It will be noted that the instruction does not hypothesize the theory of conspiracy. As drawn, the instruction was of doubtful propriety.

III. The State placed a witness upon the stand, who testified on direct examination that he was in Nelson on the afternoon of October

894

29, 1927; that he saw defendant standing on the corner of Main and Second streets by Grossman's store; that he saw a Ford coupe backed out from the north side of Second Street, but that he did not know where this car went to; that defendant was not there at that time, but that later he saw defendant on Second Street. The court at this juncture said: "You say Bresse wasn't there when the Ford coupe was backing out on the north side of Second Street and bumped into another car?" WITNESS: "No, sir. Mr. Bresse wasn't there then, but I saw him after that." THE COURT: "Strike out the testimony of this witness about the car being backed out." Thereupon, the defendant objected to the testimony being stricken out, but the court adhered to its ruling, to which defendant excepted. On cross-examination of said witness, an objection was made by the State and sustained by the court with this remark: "I think this witness is talking about some other transaction and the objection is sustained." Defendant excepted, and made an offer of proof relative to the witness observing a green Ford coupe, with wire wheels, parked on the north side of Second Street thirty or thirty-five feet east of Main Street, which collided with another car, then headed west and drove away, but that defendant was not present. The court sustained an objection to the offer of proof, and defendant excepted.

We think it is evident that the striking out of the testimony of this witness and the refusal to permit cross-examination constituted error. The testimony was admissible for what it was worth, and it was for the jury, not the court, to determine whether it related to some other transaction, as well as its probative value. On principle, we cannot distinguish it from State v. O'Connor, 105 Mo. 121, 16 S. W. 510.

IV. Section 3702, Revised Statutes 1919, is known as the habitual criminal act. However, it does not authorize a conviction on a charge of being an habitual criminal, and itself creates no offense, but only prescribes additional punishment based on the offender's crime. [State v. Collins, 266 Mo. 93, 180 S. W. 866.]

With the above section and our interpretation of it probably in mind, the defendant, after the swearing of the jury and without their presence, prior to the State's opening statement, offered to admit the previous conviction of defendant as charged, his sentence and compliance therewith and discharge from the penitentiary, and, in pursuance to said offer, requested the court to require the State's attorneys to refrain from informing the jury of said former conviction by mentioning it in their opening statement or by reading the portion of the information referring to it or by introducing evidence relative thereto, and authorized the court to instruct the jury that, if he was found guilty on the charge of stealing Townsend's car, they were to

assess defendant's punishment at twenty-five years' imprisonment in the state penitentiary. The theory of defendant was that his offer to the court covered all that the State expected to prove, and that evidence as to his former conviction would only prejudice and inflame their minds against defendant as to the charge on trial.

Defendant was on trial for a felony, that of participating in the theft of a motor car. It is true that Section 3702 of itself creates no offense, but, if its essential elements are present and proved, it does prescribe a greater punishment upon the jury finding defendant guilty of the offense on trial.

The finding of facts, under our procedure, is the function of the jury, and this includes the ultimate finding of guilt, and primarily the assessment of the punishment. In a felony case, a defendant cannot consent to a trial before the court without the intervention of a jury. [State v. Talken, 316 Mo. 596, 292 S. W. 32.] In effect, the court's assent to defendant's offer would have been tantamount to a trial in part before the court and an usurpation of the function of the jury. It would have resulted in the cause being tried partly by the court and partly by the jury. Notwithstanding defendant's tentative admission, it was the function of the jury to pass upon defendant's previous conviction and the court's consent to the offer would have usurped that function. To sustain a conviction under Section 3702, supra, it was necessary for the State to plead and prove the essential elements of said section, and it was necessary for the jury to find them. [State v. Schneider (Mo. Sup.), 29 S. W. (2d) 698; State v. Dalton (Mo. Sup.), 23 S. W. (2d) 1.] The assessment of the punishment was primarily a function of the jury, subject to their discretion and finding within the limits fixed by the statute, and we think the jury were entitled to know and have before them every essential fact that would tend to aid them in determining the punishment. In other words, the jury were entitled to know the reason for the infliction of the punishment ordered by the court's instruction. In this regard the court did not err.

V. Defendant complains that the court erred in permitting certain State witnesses to testify that they observed a man alight from defendant's car and get into a green Ford coupe with wire wheels, because the description was insufficient to identify it as the Townsend car. The description of the car, the time and the place were coincident with the testimony of Townsend. The probative value of the testimony was for the jury. Defendant also argues that the testimony was inadmissible because it was rebutted by the positive testimony introduced on behalf of defendant, that he was hired by a traveling man to take him to Nelson. The verity of defendant's evidence was for the jury [Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S.

W. 907.] We have heretofore disposed of the contention that a conspiracy was not shown.

VI. While the testimony of witnesses tending to show that defendant was seen at various places along the road driving his car, followed by a stranger driving a green Ford coupe with wire wheels, standing alone, would have been of little probative value, if any, yet, viewed in the light of other evidence that Townsend's car was stolen and that a stranger was seen to alight from defendant's car and board a green coupe at approximately the place where Townsend parked it, later driving it away, followed by defendant in his car, it was admissible in corroboration of and as tending to show a conspiracy to steal the car.

VII. Other alleged errors are called to our attention, but as the objections to them now urged are capable of being obviated, or are unlikely to occur in the same manner upon a retrial, we think it unnecessary to discuss them.

For the error appearing, the judgment is reversed and the cause remanded. *Cooley, C.,* concurs; *Westhues, C.,* not sitting.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Henwood, J.,* not sitting.