STATE of Missouri, Plaintiff-Respondent,

v.

**Buford R. NICHELSON,**
Defendant-Appellant.

No. 37571.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Jan. 25, 1977.

Motion for Rehearing or Transfer
Denied Feb. 16, 1977.

Application to Transfer Denied
March 14, 1977.

Hanks, Taylor & Suddarth, Jerry Suddarth, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., W. Mitchell Elliott, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., James R. Hartenbach, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

SIMEONE, Chief Judge.

This is an appeal by defendant-appellant, Buford Richard Nichelson,[1] from a judgment of conviction entered on October 31, 1975, for the offense of stealing a motor vehicle, §§ 560.156, 560.161, RSMo. The court, having found that the defendant came within the provisions of the Second Offender Act, § 556.280, sentenced the appellant to seven years in the department of corrections.

On September 14, 1976, we handed down a divisional opinion. Prior thereto, appellant had requested an oral argument. But, because of some clerical error, the cause was erroneously submitted on briefs. After our divisional opinion was handed down, appellant filed a motion for rehearing.

Since the divisional opinion of September 14, 1976 did not deal with the merits of one of the points raised in the briefs, we sustained the motion for rehearing and reset the cause for argument and heard arguments on the issues raised by appellant. Our opinion of September 14, 1976 is hereby withdrawn and we deal here with the merits of all of the points raised by the appellant seeking a reversal and remand of the proceedings.

The evidence shows that on May 7, 1974 Mr. Seth Werner Burgman, a retired gentleman, owned a 1970 Chevrolet Impala Coupe. On the morning of May 7, 1974, he and his wife went shopping at the South County Shopping Center where he parked his car, locked the doors and went into Famous-Barr to shop.

Meanwhile, some distance away, several detectives from the Criminal Intelligence Bureau and three officers from the St. Louis County Organized Crime Task Force were in the area of Beck's Auto Sales located within the immediate vicinity. The officers had radio communication with each other. One of the officers was Detective Frank Horvath. He was in an unmarked car and at the rear of Beck's Auto Sales. He observed that the defendant, Nichelson, was in the driver's seat of a red 1973 Ford Ranchero. Another man was in the Ranchero—Joe Dean Cantrell. Detective Horvath saw the Ranchero leave the auto sales lot, proceed south on Lemay Ferry Road and pull onto the South County Center parking lot. The officer did not see the Ranchero again until it left the lot and "headed" towards I–55. The Ranchero at that time was stopped at a light and was behind the 1970 Chevrolet now driven by Cantrell. Officer Horvath at this time arrested the defendant, Buford Nichelson, who was driving the Ranchero. It was approximately 10:30 a. m.

Another officer, James Holt, was in the vicinity of the auto sales store in an un-

---

1. Throughout the transcript and briefs, the defendant is referred to as Buford Richard Nichelson. However, an amendment was made to the information as to the spelling of the defend-ant's name. The amendment amended the spelling of the name from "Nichelson" to "Nickelson."

marked automobile. He saw the Ranchero, being driven by the defendant, Nichelson, come "out of a side street" and he followed the Ranchero. The vehicle went south on Lemay Ferry Road to a bowling alley, then to a Venture Store parking lot where it "drove slowly by the front of the building in between the aisles of cars," and then pulled onto Lemay Ferry Road and went to the South County Shopping Center. He did not see the vehicle again until he stopped the Ranchero and the Chevrolet at Lindbergh and I–55. At this time, Officer Holt placed the driver of the Chevrolet, Joseph Dean Cantrell, under arrest.

A third detective, Ronald C. Stauffer, of the Criminal Intelligence Bureau, was also in the "neighborhood" of Beck's Auto Sales. He was in an unmarked vehicle and in communication with the other officers. He observed Cantrell and Nichelson in the Ranchero southbound on Lemay Ferry Road at Telegraph Road. He too saw the Ranchero pull "out of the Venture Store lot," and then saw it pull "into the entrance of the South County Shopping Center." The car went to the upper level where Mr. Burgman's vehicle was parked. Detective Stauffer, watching through a pair of ten-power binoculars from sixty to seventy-five yards away, saw Nichelson driving the Ranchero and Cantrell sitting in the passenger's seat of that vehicle. The Ranchero pulled up "next to a 1970 Chevrolet" so that the passenger's door of the Ranchero was alongside the driver's door of the Burgman Chevrolet. Cantrell ". . . got out of the Ford Ranchero along by the side of the 1970 Chevy, and ducked down between the cars." Stauffer then lost sight of Cantrell for about fifteen seconds. Cantrell then raised up and re-entered the Ranchero. Nichelson backed the Ranchero into a parking place behind the Chevrolet. After doing so, the officer saw that Cantrell ". . . was leaning forward in the seat with his arms down toward the floorboard, and Mr. Nichelson was looking—moving his head back and forth, looking across the lot." After about three minutes, Nichelson moved the Ranchero towards the Chevrolet and made a right turn in front of it; Cantrell got out

of the Ranchero, walked over to the passenger's door of the Chevrolet, slid across the seat and "started the car" [the Burgman Chevrolet]. The two cars then drove away and stopped for a traffic light at Lindbergh and I–55 where Officers Horvath and Holt, and perhaps others, converged upon them. Both Cantrell and Nichelson were arrested. After the vehicles were stopped, Detective Stauffer had occasion to look "inside that Ford Ranchero." He saw a "brown paper bag on the floor, with a hand-held keymaker on top of it, and a pair of vise grips and blank virgin keys." Other items were also found inside the Ranchero by Detective Stauffer and other officers. These items consisted of a bolt cutter, a dent puller, wrenches, screwdrivers, hammers, old locks and metal shavings.

After Mr. Burgman and his wife had finished shopping, they returned to the parking lot but could not find their car. They then called the police. When the police arrived they took the Burgmans to Lindbergh and I–55 where the Ranchero and Chevrolet were stopped and there Mr. Burgman identified his vehicle. When he observed his vehicle, the lock on the driver's side was "just pushed in and had some tape wrapped around it and it was pushed in the hole where it was pushed out. It was just pushed back in." He took the lock out and gave it to an employee of the prosecutor's office.

After these events on May 7, 1974, the appellant was charged by an amended information with a prior conviction and acting with another in stealing a motor vehicle. Trial was held and the above evidence was adduced. At the close of the case, appellant moved for a judgment of acquittal. The court overruled the motion although it indicated that "I think it's very close . . . extremely close." After instructions, the cause was argued. Defense counsel's argument consisted of attempting to show, as he had brought out on cross-examination of state's witnesses, that appellant had committed no act which was illegal and that appellant had not participated in the stealing of Mr. Burgman's

vehicle. Appellant argued that the circumstances were consistent with innocence and the tools and instruments found in the Ranchero were not illegal possessions.

During the second half of the closing argument, the prosecuting attorney stated:

". . . I really think that was an obvious attempt to stay away from the evidence, to talk about other things.
. . .

He talked about tools, and that men all have tools in their cars. That's true, I suppose, many men do. But ask yourselves, how many men have a hand-held keymaker in their car? How many have seven or eight blank keys in their car? How many have two or three spare lock mechanisms in their car? . . .

. . . Don't make any mistake about the acting in consort with one another. The evidence is clear on that. I think you can infer from how easy they did it, and it's very logical, Buford Nichelson knew what he was doing and that he was a *professional car thief.*" (Emphasis added).

Objection was made and overruled. The prosecutor continued:

"From the evidence you have seen in this case, no doubt can be left in your minds that there sits a professional car thief. . . . In my opinion he is a *professional car thief.* The evidence is overwhelmingly obvious. . . . But does that mean he's not guilty of the theft because he was clever enough to remain in the car? . . ."[2] (Emphasis added).

Later the prosecutor referred to the "professional methods" these two men used. At the conclusion of his argument, the prosecutor stated:

". . . The evidence is overwhelming. It makes it clear Buford Nichelson is a *professional car thief.* There is no doubt about that. The evidence makes it absolutely clear. . . ." (Emphasis added).

After instructions and argument, the jury retired and found the defendant guilty. A motion for new trial was filed and overruled. The defendant was sentenced. On appeal defendant contends that the court erred (1) in failing to sustain his motion for judgment of acquittal and (2) in refusing to declare a mistrial because of the prosecutor's argument referring to appellant as a "professional car thief."[3]

Appellant first contends that the court erred in failing to sustain his motion for judgment of acquittal at the close of the evidence and in submitting the cause to the jury for the reason that the evidence was insufficient to submit the cause to the jury. In determining this issue, the appellate court considers as true the evidence favorable to the state and the favorable inferences to be drawn therefrom and evidence to the contrary is to be rejected. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence, considered in the light most favorable to the state and all inferences therefrom, disregarding evidence to the contrary, is sufficient to make a submissible case. If there is sufficient evidence to support the finding of the jury, it should not be disturbed on appeal. *State v. Cain,* 507 S.W.2d 437, 438 (Mo.App.1974); *State v. Arnold,* 534 S.W.2d 836, 837 (Mo.App.1976).

In the resolution of this issue, we must not only view the evidence in a light most favorable to the state but we are governed by other principles which may be briefly stated: (1) all persons who partici-

---

**2.** Two other references were made that the police had done an excellent job in "catching" two "professionals." No objections were made to those references to "professionals."

**3.** Appellant in the argument portion of his brief complains that the prosecutor injected his personal opinion that defendant was a professional car thief. This was not preserved in the motion for new trial and is not preserved for review. We do not find it to be plain error under Rule 27.20(c). A prosecutor, of course, is not to inject his personal opinion of guilt. *State v. Cole,* 252 S.W. 698, 701 (Mo.1923); *State v. Groves,* 295 S.W.2d 169, 173 (Mo. 1956).

pate in an offense are equally guilty; (2) presence of an accused at the commission of an offense is evidence to be considered but to sustain a conviction something more than presence must be shown. In addition, it is necessary that the accused associate himself with the venture or affirmatively participate in the offense in some manner. Proof of any form of participation suffices. Any evidence showing any form of affirmative participation is sufficient to support a conviction. The evidence to show affirmative participation may be circumstantial. But, in order to warrant a conviction based on circumstantial evidence, the facts and circumstances must be consistent with each other, be consistent with the hypothesis of the guilt of the accused and be inconsistent with every reasonable hypothesis of innocence. *State v. Burks*, 521 S.W.2d 11, 14–15 (Mo.App.1975).

 Tested within these principles, there was sufficient evidence to submit the cause to the jury. The appellant was in an automobile in which were found tools and equipment for duplicating keys; appellant was present when undoubtedly a duplicate key to the Chevrolet belonging to Mr. Burgman was made; he moved the car back and forth; he "watched" during the period of time a key was undoubtedly being duplicated by Mr. Cantrell; he moved his head back and forth—looking across the lot. The reasonable inferences from the circumstances show that there was more to this transaction than merely helping a friend as argued by the defense. It was not necessary for the state to show defendant personally drove the stolen Burgman vehicle. One who acts on a lookout aids in the commission of the offense since it is affirmative participation. *State v. Breese*, 326 Mo. 885, 33 S.W.2d 919, 922 (1930). The jury could infer that under all of the facts and circumstances the defendant participated in the offense and acted as a lookout while Mr. Cantrell was making a duplicate key in the Ranchero. Presence, companionship and conduct before and after an offense are circumstances from which the defendant's participation in the crime may be inferred. *State v. Johnson*, 510 S.W.2d 485, 489 (Mo.

App.1974). Here, defendant drove with Cantrell before the theft, remained with him as lookout in the Ranchero and drove directly behind Cantrell who was driving the Chevrolet after the theft. From all of the actions of the defendant, the jury could well infer defendant's participation in the offense of stealing a motor vehicle. Hence, the trial court did not err in denying the motion for judgment of acquittal.

Neither did the trial court err in overruling appellant's motion for a mistrial in the context of this case on the ground that the prosecutor used the term "professional car thief."

 While the duty of the prosecutor is to see that an accused receives a fair trial, the prosecutor has wide latitude in oral argument. The trial court has wide discretion in determining the latitude permitted counsel in argument and we will not disturb that discretion unless there has been a clear abuse thereof. As long as the prosecutor stays within the confines of the evidence and its reasonable inferences therefrom, the argument is legitimate. *State v. Bolden*, 525 S.W.2d 625, 634 (Mo.App.1975). But argument cannot go beyond bounds so that it excites, inflames or appeals to prejudice. *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526 (banc 1947). In *State v. Taylor*, 508 S.W.2d 506, 514 (Mo.App.1974), we held that reference to the defendant as a "pusher" under the evidence was not reversible error.

 We hold that the trial court did not err in these circumstances in denying the motion for mistrial because of the prosecutor's references to "professional car thief." The granting of a mistrial is a drastic remedy and much must be left to the discretion of the trial court. We find no abuse of discretion here. In the context of this case and under the facts as they were developed at trial, the references to "professional car thief" were within the confines of the evidence. The prosecutor's references to "professional" were used in relation to the evidence in the case and were used to show that the offense was done in a professional

and efficient manner. The tools and equipment found in the Ranchero—a keymaker, blank keys, dent puller and other tools were indicative of the efficiency employed. In this context, "professional" did not imply that the defendant had committed other similar offenses but that the conduct of the defendant and his companion was of a "professional" quality.

Appellant relies on *State v. Mobley*, 369 S.W.2d 576 (Mo.1963), and argues that the use of the term "professional burglar" therein controls this case. In *State v. Mobley*, supra, our Supreme Court reversed and remanded the cause because of the impropriety of the prosecutor's argument. Examination of that decision shows that it is not controlling. The prosecutor clearly went beyond all propriety. He referred to himself as " 'a representative of the decent, law-abiding people of the community' " and defense counsel " 'just represents a client, a guilty client.' " *State v. Mobley*, supra, 369 S.W.2d at 579. He also referred to Mobley as a " 'notorious criminal, a professional burglar, a man who has shown, by his long record, that he has no regard or respect for the rights of other people.' " *Id.* Under those circumstances, the court held that the purpose of the argument was to inject unconnected offenses. That is not the situation here. *State v. Mobley*, supra, is not dispositive of the issue presented. We conclude that the references to "professional" were within the context of the evidence. We find no error.

We have read the entire transcript; we have read the briefs; and we have read the authorities relied upon by the appellant and find that they are not controlling. We are convinced that there is no prejudicial error and that the judgment of conviction should be affirmed.

The judgment is affirmed.

KELLY and GUNN, JJ., concur.