**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Billy Frank LYELL,
Defendant-Appellant.**

No. 12356.

Missouri Court of Appeals,
Southern District,
Division Three.

May 13, 1982.

John D. Ashcroft, Atty. Gen., Sara Rittman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dennis P. Wilson, Parsons, Mitchell & Wilson, P. D., Dexter, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of burglary in the second degree (§ 569.170)[1] and stealing (§ 570.030) and sentenced to imprisonment for three years on each charge, the sentences to run consecutively. Defendant appealed.

James Lyell (defendant's nephew), Robert Hindman, defendant and others were at a house in Kennett "all getting drunk and stuff" when the subject of burglarizing a

---

**1.** Statutory references are to RSMo 1978. Rule    references are to Missouri Rules of Court, 1982.

house was broached. The named trio went to a home in Dunklin County riding in defendant's truck driven by Hindman. The then unoccupied house was broken into and five firearms, a sewing machine and a vacuum cleaner were stolen therefrom.

Before defendant's trial, Lyell and Hindman had pleaded guilty to charges arising from the happenings just recounted. Lyell and Hindman were summoned as state's witnesses in the trial of defendant herein. During Hindman's testimony and that of Lyell's, these witnesses said that defendant did not enter the burglarized house because he was "passed out" in the truck. However, both admitted to having previously told the authorities that defendant also had entered the house.

A deputy sheriff testified that the morning following the burglary, he arrested the defendant and took him to jail. Thereafter, the deputy recovered the guns, the sewing machine and the vacuum cleaner that had been taken in the burglary. Three days after defendant's arrest an investigator for the prosecuting attorney, after advising defendant of his "rights," talked to defendant at the county jail. The investigator testified defendant told him that he had been "drinking excessively" the day of the burglary, that the burglary was Hindman's idea and that he remembered leaving in his truck from where he was and going down to the Gobler area of Dunklin County. Defendant, according to the investigator, stated that when he awoke the next morning, Hindman, some guns, a sewing machine and a vacuum cleaner were at his residence.

Defendant rested without offering any evidence.

Section 562.041 states: "1. A person is criminally responsible for the conduct of another when ... (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing, or attempting to commit the offense."

For the purposes of this opinion we will assume the evidence did not establish that defendant did, in fact, enter the premises burglarized and personally remove any of the stolen items from the house. Such an assumption, however, does not per se absolve defendant of guilt as an aider and abetter under § 562.041. One who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission thereof is guilty of that offense. *State v. Lute,* 608 S.W.2d 381, 384 (Mo.banc 1980). Aiders and abetters who act with common purpose with active participants in the crime, incur criminal liability by any form of affirmative advancement of the enterprise. The state's proof to effect a proper conviction need not show that defendant personally committed every essential element of the crime. *State v. Pierson,* 610 S.W.2d 86, 91[6] (Mo.App. 1980). Among other things, indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. *State v. Kennedy,* 596 S.W.2d 766, 769[5] (Mo.App. 1980). Proof of any form of participation by defendant in the crime is enough to support a conviction [*State v. Nichelson*[2], 546 S.W.2d 539, 543[5] (Mo.App.1977)] and his presence at the scene, his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. *State v. Nichelson,* supra at 543[8]. Further, the possession of recently stolen property is a circumstance from which guilt may be concluded. *State v. Puckett,* 611 S.W.2d 242, 245[10] (Mo.App.1980). Finally we note that defendant's voluntary intoxication, if so, was a defense not available to him for he made no such claim in the trial court or upon appeal. § 562.076; cf. *State v. Gullett,* 606 S.W.2d 796 (Mo.App.1980).

"In determining the sufficiency of the evidence to support the conviction, this

---

2. *State v. Nichelson,* 546 S.W.2d 539, n. 1 p. 540, notes an amendment was made to the information as to the spelling of defendant's name. The amendment amended the spelling of the name from "Nichelson" to "Nickelson".

court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom which tend to support the verdict, and reject contrary and contradictory evidence." *State v. Montgomery*, 591 S.W.2d 412, 413[1] (Mo. App.1979). When viewed as above required, the evidence established that defendant, his nephew and Hindman were together drinking with others when the subject of burglary and stealing arose and the three obviously agreed to jointly undertake the task. Defendant and the other two departed the location where the conspiracy was hatched in defendant's vehicle en route to accomplish their common purpose. Albeit Hindman and the nephew had initially told investigating officials that defendant had entered the burglarized house, their trial cross-examination testimony that he had not done so because he "passed out" did not negate the fact defendant was actually present at the scene of the crime when committed and departed therefrom in the company of companions with whom he had associated both before and after the crimes were perpetrated. Furthermore, as the investigator testified, defendant admitted that when he awoke at his residence the morning following the burglary and stealing, Hindman and several of the stolen items were at his place of abode. The presence of some such items at defendant's place was confirmed by the deputy sheriff who found them following defendant's arrest. Predicated upon the principles and authorities hereinbefore cited, we opine the evidence presented was sufficient for the jury to properly conclude that defendant was guilty of burglary and stealing as having been an aider and abetter.

Finally defendant here states the trial court erred in overruling his objections and in failing to grant his motions for mistrial or for new trial because of the prosecuting attorney's arguments to the jury. The first portion of the argument objected to was: "If it were I [who was to determine defendant's punishment], I would add to what punishment he should receive for this simple burglary and stealing because of what he's done to these boys and you saw the result of, and you saw what additional things he led them to do here today." Defendant's objection was "There's no evidence that he had these boys to do anything. There's no evidence whatsoever of that . . . ."

Defendant's nephew (James Lyell) and Robert Hindman testified they were 17 and 19 years of age respectively at the time of trial on May 19, 1981, and throughout the proceedings they were referred to as "boys." The testimony, except for referring to defendant as a "man," does not indicate defendant's age. However, the amended information filed May 19, 1981, charging defendant as a persistent offender, alleges six previous felony convictions, the first of which occurred February 20, 1962, or more than 19 years before trial. From this we may reasonably assume, as the jury could have observed, that defendant was considerably older than his nephew and Hindman.

We think the prosecutor's argument was intended to have two connotations. First, because of defendant's age as compared to that of the two involved teenagers, it probably was defendant's maturity which provided the leadership necessary in planning and executing the crimes and the subsequent abortive attempts to conceal the stolen property. Second, because defendant's nephew and Hindman initially testified at trial contrary to their first representations to authorities that defendant had, in fact, entered the burglarized house, defendant had influenced them to change their recountings and to relate untruths. Hindman admitted while testifying that defendant had talked to him about his case "when we were both down there in the Kennett Jail."

Counsel's argument rests within the sound discretion of the trial court and its decisions thereon will not be reversed absent a manifest abuse of that discretion. The state has the right to comment upon the credibility of witnesses and to draw inferences from the evidence which it in good faith believes to be justified. The

inferences that defendant, because of his age, etc., was a leader in the criminal undertakings and that he could have influenced his youthful companions into changing their testimony from what they admittedly first recounted to the authorities, seem to us to be acceptable and permissible inferences to be drawn from the evidence for closing argument purposes. *State v. Hendrix*, 570 S.W.2d 311, 312[1–4] (Mo.App. 1978).

The defendant's second complaint concerning the prosecutor's closing argument stems from the following declamation: "That aspect [the punishment imposed] is entirely up to you. And if you want to extend to [defendant] the benefit of some further doubt, we've given him this fine courtroom, this trial, not one, but two lawyers. If you want to give him the benefit of some further doubt, please,—." Defendant's objection to this segment of the argument was "on the basis that he is telling this jury that I was appointed in this case. That's highly improper and it's designed to do nothing more than blame this jury based on all the publicity that's been going on about appointed lawyers." The point relied on in defendant's brief, which misquotes the prosecutor's argument, supra, claims the trial court erred in overruling defendant's objection because the "argument was an incorrect statement of the law, was calculated to inflame the jury against defendant and was intended to inform the jury that the defendant was represented by appointed counsel all of which was prejudicial to defendant."

Wherein and why, as required by Rule 30.06(d), the prosecutor's argument incorrectly stated the law or tended to inflame the jury by telling it defendant was represented by appointed counsel, is left for us to guess. Courts of appeal have no duty to search the transcript on appeal or the argument portion of an appellant's brief to ascertain the possible intendments of points tendered in an abstract and conclusory fashion. *State v. Holt*, 603 S.W.2d 698, 701[1] (Mo.App.1980). But more importantly as to the point relied on in defendant's brief is the requirement that the point must be based upon the objections made to the trial court. On appeal the defendant may not broaden his trial court objections or expand them in his points relied on. *State v. Brown*, 604 S.W.2d 10, 13[1] (Mo.App. 1980). As defendant's trial objection to the argument did not assert it "was an incorrect statement of the law," we need not and do not explore the correctness vel non of that portion of the argument. Furthermore, the assertion that the prosecutor's argument, as stated in defendant's trial objection, was "designed to do nothing more than *blame this jury* based on all the publicity that's been going on about appointed lawyers" (emphasis supplied) is something the writer hereof is unable to understand.

In reference to that portion of the prosecutor's jury-statement that defendant had been given "this fine courtroom, this trial, not one, but two lawyers," the argument section of defendant's brief does not undertake to demonstrate, except for counsel's own conclusion, how this constituted an obvious reference to appointed counsel or how such an alleged alluding was prejudicial to the defendant. The argument portion of defendant's brief, apparently in reference to prejudice arising from the fact of appointed counsel and as a supposed "clincher" for his supposition, contains this sentence: "This Court may judicially note that at the time of this trial . . . and for some time prior to that date there had been considerable publicity in the State of Missouri concerning the status of appointed counsel for indigent defendants." Defendant does not demonstrate how this court "may judicially note . . . considerable publicity . . . concerning the status of appointed counsel for indigent defendants" or what the status of such appointed counsel was supposed to be or why the publicity of such status was prejudicial to defendant. Judicial notice is to be exercised with caution. If there is doubt (which we certainly entertain concerning publicity about the status of counsel appointed for indigents) as to the notoriety of such a fact, judicial recognition of it must be declined. *Endicott v. St. Regis Investment Company*, 443 S.W.2d 122,

126[4] (Mo.1969). While we do not agree the argument complained of can have no connotation other than that defendant was represented by appointed counsel, we feel that even if defendant's asseverations as to its intendments be true, it does not necessarily follow that defendant was prejudiced thereby. As the state submits, the fact defendant as an indigent was required, because of economic necessities, to rely on appointed counsel, could have caused the jury to have bestowed sympathy upon his cause.

Judgment affirmed.

BILLINGS, P. J., and HOGAN and PREWITT, JJ., concur.