**STATE of Missouri, Respondent,**

v.

**James Ray GANNAWAY, a/k/a Jimmy R. Gannaway, Appellant.**

**No. 12725.**

Missouri Court of Appeals,
Southern District.

March 3, 1983.

Motion for Rehearing or to Transfer to Supreme Court Denied March 25, 1983.

John D. Ashcroft, Atty. Gen., Sandra K. Stratton, Asst. Atty. Gen., Jefferson City, for respondent.

Devon F. Sherwood, Springfield, for appellant.

TITUS, Judge.

A Greene County jury declared defendant guilty of second degree assault [§ 565.060–1(2) ][1] and kidnapping [§ 565.110–1(4) ] for which he was respectively sentenced to consecutive prison terms of three and twelve years. Defendant appealed.[2]

 Defendant's initial point relied on is that the court nisi erred in failing to submit a MAI–CR2d 3.30.1 instruction, "Intoxicated or Drugged Condition—Negation of Purpose or Knowledge", for the offense of *second* degree assault.[3] The initial trouble with this point relied on is that, contrary to the mandates of Rule 30.06(e), the argument portion of defendant's brief on appeal fails to set forth such an instruction. The point, therefore, is not preserved for our review. *State v. Perry*, 565 S.W.2d 841, 843[3] (Mo.App.1978). Moreover, the legal file is barren of such an alleged tendered but refused instruction to demonstrate that a MAI–CR2d 3.30.1 instruction on the second degree assault charge was actually ever sought. Rule 28.02(f). In addition, "MAI–CR instructions in the 3.00 Series *may* be given by the court without a request therefor and *shall* be given *where*

---

1. Statutory references are to RSMo 1978. Rule references are to V.A.M.R.

2. Counsel for defendant on appeal was not his trial lawyer.

3. Unless otherwise indicated, all emphases herein are ours.

*applicable* if requested in the manner provided in this Rule." Rule 28.02(a). Albeit defendant's counsel asked and the court gave [probably . improperly at defendant's request concerning which he may not complain, *State v. Lowery,* 565 S.W.2d 680, 683–684[1] (Mo.App.1978)] MAI–CR2d 3.30.1 instructions as to *first* degree assault and kidnapping, trial counsel acknowledged there were no other instructions than those then proposed that he desired to be given. Defendant had evidence anent his daytime drinking before the nighttime alleged crimes were committed. But his personal testimony at trial, consisting of detailed accounts of his actions and those of others involved at the pertinent times in question, indicated and attested to a comprehensive awareness of his behavior, deportment and conduct which belies any "degree of complete drunkenness which makes a person incapable of forming intent to perform an act or commit a crime." *State v. Guiden,* 46 Wis.2d 328, 174 N.W.2d 488, 490[3] (1970). In other words, defendant "testified too much.... His recall belies his intoxication theory. There was no substantial evidence of the severe intoxication required by § 562.076.1(1).... Defendant did not carry his burden of 'injecting the issue.'" *State v. Bienkowski,* 624 S.W.2d 107, 108[3] (Mo.App.1981). Defendant's first point relied on is denied.

■ Defendant's second and third points relied on question the sufficiency of the evidence to support his conviction of second degree assault and kidnapping. To determine the sufficiency of the evidence this court will accept as true all the record evidence tending to support the jury's finding of defendant's guilt, together with all inferences which can be reasonably drawn therefrom, and will disregard contrary evidence and inferences. *State v. Aubrey,* 610 S.W.2d 78, 80[1] (Mo.App.1980). Furthermore, this court cannot weigh the evidence or substitute its assessment of the credibility of the witnesses for that of the jury. *State v. Harris,* 602 S.W.2d 840, 842[2] (Mo. App.1980). With these legal tenets in mind we will undertake a brief recasting of the evidence.

Near 11 p.m. on the date in question defendant and Choate arrived at Becky's Springfield apartment. She was not present and did not know either defendant or Choate. Johnny Worcester and Earl Smith were on the porch. Following a whispered conversation between defendant and Choate, the latter threatened Worcester and Smith with a pen held to their throats, ordered them to empty their pockets, remove their belts and struck Worcester "to show we are not kidding." While this was happening defendant wrapped his belt around his fist because, as he testified, "I thought that [Choate] was getting ready to get into a fight, so I was going to back him up" because defendant was "a pretty loyal friend" of Choate. The four then went into the apartment's kitchen and Worcester, as directed, began cooking. Defendant obtained a knife and sat at the kitchen table. After the food was consumed, Choate asked defendant "if he could handle the situation." Upon defendant's assurances that he could, Choate gave defendant an opened knife which defendant stuck into the table and warned Smith not to remove it. Choate then left the kitchen. Both Worcester and Smith testified they were intimidated by the knife and feared defendant.

After observing the arrival of an auto at the apartment, Choate returned to the kitchen and made Smith lie face down on the living room floor. He then forced Worcester to the front door. When Becky and her escort, Harvill, entered the apartment, Choate forced the two to kneel with their faces on a couch and to empty their pockets. Choate then made Worcester and Harvill lie on the floor with Smith. During this time defendant was standing in sight tossing a stick, to which was attached a chain, back and forth between his hands. The floored trio were then "stomped in the back" by someone with such fervor that Worcester suffered a broken rib which pierced a lung and collapsed it. Someone of the standing then said, "We've got the girl, let's go."

Charles Nicholson had remained in Choate's automobile while defendant and Choate were in Becky's apartment. He testified that defendant, Choate and Becky, with Becky in the middle and crying, got into the front seat of the car and that defendant, indicating Becky, said he was going to "[t]ake her out and screw her." Becky recounted that she was told to keep her head down. To enforce that direction defendant held a knife to her back. In this position Becky was driven into the country. When the car was stopped, she was ordered to get out and she, defendant and Choate walked to a fence where Choate ordered her to undress. This done, Becky's hands were tied with her shirt and the trio walked towards a tree in a field where Becky was pushed to the ground. Defendant then performed cunnilingus on Becky and Choate in turn raped her. Becky testified that at all times either defendant or Choate was holding a knife on her. When Choate was sated, defendant left and Choate blindfolded Becky with the shirt that had been used to tie her hands. She was again raped by someone she could not see. This accomplished, Becky was told to dress, was returned to the car by defendant and Choate and eventually released in Springfield. She went to a house, aroused the occupants thereof and asked them to call the police. The police took Becky to a hospital where she was examined by a physician.

 "One who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission thereof is guilty of that offense. *State v. Lute*, 608 S.W.2d 381, 384 (Mo. banc 1980). Aiders and abetters who act with common purpose with active participants in the crime, incur criminal liability by any form of affirmative advancement of the enterprise. The state's proof to effect a proper conviction need not show that defendant personally committed every essential element of the crime. *State v. Pierson*, 610 S.W.2d 86, 91[6] (Mo.App.1980). Among other things, indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after

commission of the crime. *State v. Kennedy*, 596 S.W.2d 766, 769[5] (Mo.App.1980). Proof of any form of participation by defendant in the crime is enough to support a conviction [*State v. Nichelson*, 546 S.W.2d 539, 543[5] (Mo.App.1977)] and his presence at the scene, his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. *State v. Nichelson*, supra at 543[8]." *State v. Lyell*, 634 S.W.2d 239, 241[1–5] (Mo.App.1982).

 Count I of the information charged that defendant "recklessly caused serious physical injury to ... Worcester by striking and kicking him in the back." There was no direct evidence to show who actually did the kicking and for our purposes here we will assume, as defendant has done, that Choate did the actual kicking. But even so, under the just cited authorities this does not exonerate defendant from criminal liability as an aider and abetter. Defendant was an active participant in forcing his and Choate's way into Becky's apartment. He aided and abetted Choate at every moment of their venture. Defendant's act of wrapping his knuckles with a belt to back up Choate, his guarding of Worcester and Smith at knife point in the kitchen, his tossing the stick-chain back and forth to signal he was ready to aid Choate in the enforcement of the latter's demands, his flight from the apartment with Choate and his continued association with Choate thereafter attest that defendant was doing more than merely being present. Defendant also asserts that he cannot be held to have aided in the commission of a reckless act. But what this ignores is that it was defendant, not Choate, who was charged with having acted recklessly, i.e., "[W]hen he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.-016–4. Also, § 562.046(1) acknowledges that participants to an offense do not need to possess the same mental state by provid-

ing, inter alia, that it is no defense to a "prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that (1) [s]uch other person . . . was unaware of the defendant's criminal purpose."

As to Count II, the kidnapping charge, the jury had evidence of defendant's signal to the others present with a stick and a chain that no one was to interfere with Becky's removal from the house, of his holding a knife on Becky to insure she kept her head down in the car, defendant's assertion that he was going to "screw" her, defendant's personal sexual conduct with Becky after their arrival in the field and his holding a knife on Becky while Choate raped her clearly illustrated that defendant's participation in the abduction was much more than mere presence. Cf. *State v. Duff,* 607 S.W.2d 223, 224[3][4] (Mo.App.1980). Defendant's second and third points relied on are denied.

Defendant's fourth and final point relied on is that the court erred in giving Instruction No. 8, patterned after MAI–CR2d 19.04.2 Assault in the Second Degree, because paragraph "Second" thereof concluded with the direction to the jury "then you *will* find the defendant guilty," whereas Notes on Use under MAI–CR2d 2.12 Parties: State's Verdict Directing Instruction—Active Participants or Aiders, dictates that "The word 'may' must be used in the phrase 'then you (will) (may) find the defendant guilty, etc.' in any case where Section 562.051 [conviction of different degrees of offenses] is applicable."

The first difficulty with this point is that it runs afoul of Rule 28.03 which, in part, provides: "However, *specific* objections to given or refused instructions . . . shall be required in motions for new trial *unless made on the record at the time of trial.*" At trial defendant only objected "to each and every instruction" (except to those he offered) at trial and his motion for a new trial did not object to the giving of Instruction No. 8 for any of the reasons now advanced. Consequently, defendant's fourth point relied on has not been pre-

served for appellate review. *State v. Moland,* 626 S.W.2d 368, 370[1] (Mo.1982); *State v. Lewis,* 637 S.W.2d 93–94[1] (Mo. App.1982).

The second difficulty with defendant's fourth point is that he incorrectly relies on MAI–CR2d 2.12 and the Notes on Use as adopted January 1, 1979. On April 14, 1981, to be effective January 1, 1982, the Missouri Supreme Court repealed old MAI–CR2d 2.12 and the Notes on Use and adopted in lieu thereof a new MAI–CR2d 2.12 and new Notes on Use. The new instruction reads: "then you *will* find the defendant guilty" just as in Instruction No. 8 herein. Vol. 37, No. 4, June 1981, Journal of the Missouri Bar, pp. 270–271. Albeit the new instruction was rescinded and the 1979 version reinstated, the new version effective January 1, 1982, was reinstated by the Supreme Court on February 16, 1982, with the proviso that use of the April 14, 1981, version of MAI–CR2d 2.12 from January 1, 1982, to April 1, 1982, "shall not be presumed to be error." Vol. 38, No. 3, April-May 1982, Journal of the Missouri Bar, pp. 211–212. The trial herein concluded and the jury was instructed on February 18, 1982. Thus there was no error in Instruction No. 8. Defendant's fourth point is denied.

Judgment affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.