**STATE of Missouri, Respondent,**

v.

**Michael HOUSE, Appellant.**

**No. WD 37082.**

Missouri Court of Appeals, Western District.

Nov. 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1987.

Fred Duchardt, Public Defender, Liberty, for appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and NUGENT and GAITAN, JJ.

CLARK, Chief Judge.

Michael House was convicted by a jury of the offense of stealing property valued at $150.00 or more. He contends on this appeal that the evidence by the state was insufficient to support the conviction and that his motion for a judgment of acquittal should have been sustained. Affirmed.

The evidence presented by the state and not contested by appellant established that appellant, Jimmy Simmons, who testified for the state, and Mike Marlow were at an apartment of a friend on the evening of March 23, 1984. Marlow and Simmons engaged in a discussion of ways to obtain money and talked about breaking into houses. At about 9:00 p.m., Simmons and Marlow accompanied by appellant left the apartment and walked about one block to the home of Homer Boyce who was not known to any of the three. Marlow went to the door and finding no one at home, he forced entry by kicking in the door. Appellant stood by without entering and Simmons remained in the street. Soon, Marlow emerged from the house carrying a pillowcase in which were items of silverware and jewelry taken from the residence.

Appellant, Marlow and Simmons returned to the apartment from the Boyce house and obtained the loan of an automobile from a woman friend. The pillowcase with the stolen goods was placed in the car and the three drove off. At some point, Simmons who was driving let appellant and Marlow out, the apparent plan being that Marlow would commit another burglary.

Later, Simmons returned, picked up appellant and Marlow and they drove to appellant's house. The contents of the pillowcase were emptied out and according to Simmons, the silverware and jewelry taken from the Boyce home were spread out along with some other items which presumably came from another theft.

Appellant contends the evidence summarized above did not make a submissible case of stealing because the proof showed only his presence at the time the burglary was committed and no evidence that he was ever in possession of the stolen goods. He cites *State v. Dudley*, 617 S.W.2d 637 (Mo.App.1981) for the proposition that mere presence at the scene of a crime is not enough to make even a circumstantial case.

The facts in *Dudley* were quite different from those in this case. Dudley was observed by a police officer standing on the sidewalk in front of a market looking inside through broken glass in the door. He appeared to be moving his hands and mouth. As the officer approached, Dudley began to run and another man, never apprehended, jumped out through the broken window and fled. There was no evidence that Dudley had associated himself with the burglary or even knew that anyone was inside the store. The facts were entirely consistent with the hypothesis that Dudley in passing by on the sidewalk had noticed the broken door and stopped to investigate. *Dudley* cites *State v. Castaldi*, 386 S.W.2d 392 (Mo.1965) for the proposition that presence at the scene of the crime, suspicious circumstances and flight do not satisfy the state's burden of proof.

In the present case, the evidence against appellant showed more than mere presence when the Boyce home was entered. Consistent with the verdict, the state is entitled on our review not only to the benefit of all favorable evidence, but also to inferences which would justify submissibility. *State v. Story*, 646 S.W.2d 68, 72 (Mo. banc 1983). Even if it be assumed, as appellant contends, that he was unaware of Marlow's plans as the trio set out looking for unoccupied houses, he was certainly aware of the criminal enterprise when Marlow commenced to batter down the Boyce front door. Instead of dissuading Marlow or calling for help or even leaving the premises, appellant stood at the entrance awaiting completion of the burglary and then accompanied Marlow as he made off with the stolen property. Finally, when the time came to appraise the results of the expedition, appellant's house was made available for that purpose.

Applicable to the facts of this case are the statements of law in *State v. Gannaway*, 649 S.W.2d 235, 239 (Mo.App.1983):

" 'One who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission thereof is guilty of that offense. *State v. Lute*, 608 S.W.2d 381, 384 (Mo. banc 1980). Aiders and abetters who act with common purpose with active participants in the crime, incur criminal liability by any form of affirmative advancement of the enterprise. The state's proof to effect a proper conviction need not show that defendant personally committed every essential element of the crime. *State v. Pierson*, 610 S.W.2d 86, 91[6] (Mo.App.1980). Among other things, indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. *State v. Kennedy*, 596 S.W.2d 766, 769[5] (Mo.App.1980). Proof of any form of participation by defendant in the crime is enough to support a conviction [*State v. Nichelson*, 546 S.W.2d 539, 543[5] (Mo.App.1977) ] and his presence at the scene, his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. *State v. Nichelson, supra* at 543[8].' *State v. Lyell*, 634 S.W.2d 239, 241[1–5] (Mo.App.1982)."

The evidence in this case was sufficient to show that appellant gave his support to Marlow's criminal activities and entitled the state to submit the charge of stealing and the offense of burglary as well.

The judgment is affirmed.

GAITAN, J., concurs.

NUGENT, J., dissents in separate opinion.

NUGENT, Judge, dissenting.

I must respectfully dissent.

The prosecution had the burden to prove defendant's guilt beyond a reasonable doubt. In this case, defendant was charged with both burglary and stealing. The only evidence connecting defendant to the burglary was his presence on the porch of the house when Marlow entered to commit the burglary and stealing. The jury acquitted defendant of the burglary charge. The only evidence to connect defendant with the stealing was Simmon's testimony that defendant House walked back to the friend's apartment with Marlow, who carried the loot from the burglary in a pillowcase. According to Simmons, at Marlow's request the defendant went in to borrow the keys to Marlow's girlfriend's car. Marlow put the pillowcase in the borrowed car. Then Marlow, Simmons and defendant House left in the car, Simmons driving and following Marlow's instructions.

During that trip nothing occurred to indicate that defendant House exercised the slightest direct or indirect control over the pillowcase and its contents. Nor did anything occur that indicated that the borrowing of the car and the ride the three men took was in any way related to the theft or the disposition of the property. Simmons, Marlow and House returned to their starting place, picked up the girls, went to a convenience store for beer and chips and then to defendant's house. Simmons could not say who carried the beer and chips or who carried the pillowcase into the house. But once inside, Marlow took the stuff out of the pillowcase and spread it on the floor, and everyone looked at it. The prosecutor never asked Simmons whether defendant House received any of the stolen goods, and Simmons never said that defendant had so much as touched the stuff. Nor did Simmons ever say that he heard defendant say a word about the burglary, the theft, the loot, or who was to get a share.

The state's argument incorrectly asserts that defendant House was present when Marlow and Simmons discussed committing a burglary. In fact, Simmons testified that defendant was not then present and that defendant did not know what Simmons and Marlow had discussed. The state goes on to argue that "the fact that [defendant] never left Marlow's company on the evening of this incident, and the fact that [defendant] and Marlow looked at the property at [defendant's] house show affirmative participation in the incident." The state has not asserted that defendant ever exercised control over or jointly possessed the burglary loot.

Something more than mere presence and the opportunity to participate in ·the commission of a crime must be shown to sustain this defendant's conviction of stealing. *State v. Prier,* 634 S.W.2d 197, 200 (Mo. 1982) (en banc). The state must show some form of affirmative participation in the criminal venture. *State v. Castaldi,* 386 S.W.2d 392, 395 (Mo.1965); *State v. Watson,* 350 S.W.2d 763, 766–68 (Mo.1961). Here, the state failed to prove beyond a reasonable doubt that defendant in any way advanced or encouraged the stealing of the goods from the burglarized house. The jury acquitted the defendant of burglary. The crime of stealing took place during the burglary, not later, and was complete when Marlow walked out of the house carrying the pillowcase full of loot.

Defendant House could, nevertheless, have properly been convicted of aiding and abetting the stealing if the evidence and the legitimate inferences from it showed that after the burglary defendant aided Marlow in transporting, concealing, dividing, distributing, or using the loot. All the evidence shows, however, is that defendant "looked" at it, as did several others. Accordingly to the state's evidence, he did not help carry it, he did not touch it, he did not use it, conceal it, distribute it, or dispose of it. He was never shown to have exercised any control over it or to have tried to do so. Nor did the evidence show that he even said anything about the burglary, the theft or the loot. The nearest the evidence

comes to showing anything more than defendant's mere presence is that someone carried the loot into his house when the beer and chips were taken in and that Marlow displayed it on the floor in the presence of at least four or five others, including defendant House.

The present case is factually distinguishable from *State v. Gannaway*, 649 S.W.2d 235, 239 (Mo.App.1983), upon which the majority relies, and from every case *Gannaway* cites. In *Gannaway*, evidence of the defendant's participation in second degree assault included forcing his way into an apartment with another perpetrator and guarding the victim and others at knife point while his partner inflicted the blows. Evidence that the defendant brandished a stick-chain weapon to prevent interference with another victim's removal from the apartment, that he held a knife on the victim to ensure that she kept her head down while being taken by car to a field, that he expressed his intention to have sexual relations with her, and that he held her at knife point while his partner raped her, was sufficient to sustain defendant's conviction on the second count, kidnapping. *Id.* at 239–40. In *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo.App.1977), detectives testified that they saw defendant drive Cantrell to the site of the crime in a vehicle (later found to contain equipment for duplicating keys) and then act as lookout while Cantrell made a key and stole an automobile. Assuming, as did the court in *State v. Lyell*, 634 S.W.2d 239, 241–42 (Mo.App. 1982), that the defendant did not enter the burglarized home, *Lyell* is the most factually similar case cited by the *Gannaway* court. However, it is distinguishable from the case at bar in that defendant Lyell "obviously agreed" with two others to jointly undertake the task of burglary and stealing. *Cf. State v. Lute*, 608 S.W.2d 381, 382 (Mo.1980) (en banc) (evidence showed that the defendant had solicited several people, including the assassin, to kill her husband in exchange for money); *State v. Pierson*, 610 S.W.2d 86, 90–91 (Mo.App.1980) (the defendant admitted having sexual intercourse with the victim but denied knowing that the victim yielded only because of threats from defendant's companion); *State v. Kennedy*, 596 S.W.2d 766, 769–70 (Mo.App.1980) (the jury could have found beyond a reasonable doubt that either defendant or his brother fired the shot that killed the victim and that both defendant and his brother actively participated in the crime), all cited in *State v. Gannaway, supra.*

In the absence of any evidence of active participation or affirmative assistance to Marlow in the theft, the majority would affirm the defendant's conviction because, "Instead of dissuading Marlow or calling for help or even leaving the premises, appellant stood at the entrance awaiting completion of the burglary and then accompanied Marlow as he made off with the stolen property." Aside from the fact that this statement of the case assumes facts not in evidence, it errs in shifting the burden to the defendant, first to try to prevent the crime and then to prove he did so. The state presented no evidence that defendant did not try to dissuade Marlow or even that he stayed on the premises. Though the majority concludes that the defendant made his house available "to appraise the results of the expedition," the evidence is at best ambiguous as to the purpose of going there. The group bought beer and chips and went to defendant's house and stayed all night. The evidence does not show that the purpose was "to appraise the results"—that may have been a mere incident of the beer party and entirely Marlow's idea.

The conviction should be reversed. The evidence and inferences from it fail to show beyond a reasonable doubt that defendant affirmatively participated in the crime of stealing.